JEREMIAH MULLEN *vs.* OLD COLONY RAILROAD COMPANY.

Suffolk.   Nov. 14, 15, 1878. — June 27, 1879.   MORTON & ENDICOTT, JJ., absent.

If a defendant obtains the signature of the plaintiff to a paper, purporting to be a settlement and discharge of the cause of action, by fraudulent representations that it is merely a receipt for a gratuity, the plaintiff may maintain his action without returning the money paid him.

TORT for personal injuries on May 14, 1877.   Writ dated May 21, 1877.   Answer, a general denial.   On April 12, 1878, the defendant was allowed to file a further answer, setting up a settlement of the case by reason of the following paper, signed by the plaintiff by his mark : " Boston, August 10, 1877.   Received of Old Colony Railroad four hundred and fifty dollars in full settlement and satisfaction for any and all claims that I have or may have against said company for injuries received at or near the entrance to their machine-shop yard, Foundry Street, South Boston, by reason of the cars running off the track and striking the gate or fence, on or about May 14, 1877."   Trial in this court, before *Morton*, J., who reported the case for the determination of the full court, in substance as follows :

The plaintiff, while travelling on Foundry Street, a public highway in Boston, was injured by the collision of two trains under the management of the defendant corporation, whereby a portion of one train was thrown against a fence which divided the defendant's track from Foundry Street, and a bar in the fence was thrown against the plaintiff.

There was evidence tending to show that the plaintiff's counsel was informed of a settlement by the counsel for the defendant, within two or three days after the above paper was executed, and that the plaintiff then had $400 of the money received by him of the defendant under this paper, in a savings bank, to his credit, and the balance in cash; and that the additional answer was shown to the counsel for the plaintiff, and filed with his knowledge, but without leave of court, on December 5, 1877.

The plaintiff contended that his signature to the above paper was procured by false representations and by fraud practised upon him by the agent of the defendant; that he had not entered into an agreement for the release, discharge or settlement of this cause of action; and that the money was given him as a gratuity, and to support him for twelve months, or until the trial, and without prejudice to his claim against the defendant. The defendant contended that the paper was a contract of settlement of the claim in suit, and could not be varied by parol evidence that the money was not received by the plaintiff in settlement of such claim. The judge so ruled, and also ruled that it was competent for the plaintiff to impeach the contract for fraud.

The plaintiff then put in evidence tending to show that he was about sixty-five years old, very poor, and illiterate, and, since the accident, unable to rest in bed, and much enfeebled in mind and body; that, after the action was begun, the plaintiff's deposition was taken in his room; that the defendant's counsel, learning that the plaintiff was dependent upon charity, offered in his presence to have the defendant send a physician to him, and to see that he did not suffer, and to suggest this course to the defendant's superintendent; that the plaintiff, with his daughter, Hannah Hogan, afterwards called upon the superintendent, who drew the above paper, and the plaintiff testified that he understood that he was settling for a year, or until the trial of his case, and his daughter, who was present, testified that he said, "I shall not call upon you for a year;" that the superintendent told the plaintiff that he had no case, that he was a trespasser, that he could prove that the plaintiff was upon the defendant's land leaning upon a bar in the fence, that he had been seen there before, that it would be a long time before his case would come on, that if he got anything the lawyers would "eat it all up,'

that he should have a job on the road, and that the road would also pay all expenses and counsel fees.

The defendant's evidence tended to show that the paper was read to the plaintiff and his daughter, and was explained to them both before they signed it; that on September 3, 1877, being called upon for pay by one Odell, who had assisted in the preparation of the plaintiff's case, the plaintiff and his daughter executed the following paper, in the presence of Odell and two other witnesses: " We, Jeremiah Mullen and Hannah Hogan, do hereby certify that the superintendent of the Old Colony Railroad did agree, on the tenth day of August 1877, upon settlement with me, Jeremiah Mullen, on account of injury received by me from said, road, on May 14, 1877, to settle all bills and charges pending in this case, irrespective of all costs to me; " that, when the plaintiff gave Odell this paper, he said that he had got $450, and had made a full settlement, and had no more to do with the defendant; that, in October 1877, the plaintiff, being told by the defendant's counsel that his counsel said that he had not settled his suit, said, "I have settled my claim; my counsel had no right to make any such statement; " and that the plaintiff also told several other persons that he had settled with the defendant.

The plaintiff contended that the receipt, if obtained by fraud, was not binding; that he could be allowed to show that the money was given for another purpose; that the minds of the parties did not meet upon any agreement for a full settlement; that the money was for a settlement for a year only; and that, under such circumstances, the action could be maintained without returning the money. But the judge ruled that the plaintiff could not maintain the action without returning the money. The plaintiff then tendered to the defendant's counsel in court the amount of money received, $450, and interest thereon from the time it was received to the date of the tender, which was refused. The plaintiff then offered to put this tender in evidence, but the judge ruled that, at that stage of the case, the plaintiff could not, as a matter of right, put this tender in evidence; and, as a matter of discretion, declined to open the case for that purpose; and directed a verdict for the defendant. If the rulings were correct, judgment was to be entered on the verdict; otherwise, a new trial was to be ordered.

*R. D. Smith & J. A. Maxwell*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendant.

SOULE, J.   The report shows that there was some evidence tending to prove that the plaintiff was induced to sign the paper, relied on by the defendant as a contract of settlement of the plaintiff's claim, by false representations as to the purport of the paper, made by the agent of the defendant, and believed by the plaintiff to be true, he being unable to read.   With the question of the weight and credibility of this evidence, and the further questions whether the conflicting testimony outweighed it or was more worthy of credit, we have no concern now.   The ruling at the trial was that, even if it were true that the plaintiff was induced to sign the paper by the fraud of the defendant's agent as to its contents, he could not maintain his action without first returning the money which he received when the paper was signed.

It is well established that, if a party enters into a contract and in consideration of so doing receives money or merchandise, and afterward seeks to avoid the effect of such contract as having been fraudulently obtained, he must first give back to the other party the consideration received.   *Coolidge* v. *Brigham*, 1 Met. 547.   *Estabrook* v. *Swett*, 116 Mass. 303.   And if, after accepting a certain sum in settlement of an unliquidated claim for damages under a contract, one seeks to pursue his remedy for the damages on the ground that the settlement was procured by fraud, or is not binding upon him, he must first repay the amount received.   *Brown* v. *Hartford Ins. Co.* 117 Mass. 479.   The principle on which these decisions rest is just; but it applies to those cases only where that which was received, and which must be returned, was the consideration of the contract or settlement which the receiver intended to make, and understood that he was making, and which he seeks to avoid by reason of fraudulent practices of the other party which led him to agree to its terms. It does not apply to cases where a party holds out that he gives the consideration for one thing, and by fraud obtains an agreement that it was given for another thing.

In the case at bar, if the evidence for the plaintiff was true, he signed the paper which purports to show a settlement of his claim, believing it to be a totally different paper from what it in

fact was. Signing in that belief, in consequence of the fraudulent representations of the defendant, he is not bound by it, because he never made the agreement which the paper indicates. He is not attempting to avoid a contract which he has made; but is showing that he did not make the contract which he apparently made. If this fact is established, it establishes the further fact that he did not receive the money, which was paid him when the paper was signed, in consideration of the settlement of his claim; for the only ground on which the effect of the paper is destroyed is that it was not his intelligent act, but was fraudulently procured by the artifice of the defendant, who knew that he had not made the settlement and had not received a consideration for a settlement. The answer of the defendant, which sets up a release and discharge of the plaintiff's claim in consideration of $450, is fully met by the plaintiff's evidence, if true; and the same evidence, which shows that the alleged release and discharge were never agreed upon, shows that the money paid was not paid under circumstances which entitle the defendant to have it returned. If it was paid for the support of the plaintiff till his case should be tried, or for a year, as a gratuity, it is clear that the defendant cannot insist on repayment. If it was paid with the representation that it was a gratuity, though with the intention on the part of the defendant's agent to get the plaintiff's signature to the paper relied on in defence, in consequence of such payment, the payment was a part of the fraudulent scheme, and the defendant cannot obtain any advantage from its own fraud.

We have not been referred by the defendant to any case in which it is held that, under circumstances like those of the case at bar, the plaintiff must repay money received by him before he can maintain his action. The case in our own reports in which the facts most nearly resemble those in this case is that of *Smith* v. *Holyoke*, 112 Mass. 517, but the question whether a return of the money was necessary became unimportant, because it was held that the offer to return it was seasonably made, if any return was necessary.

We are of opinion that the case should have been submitted to the jury, and that there must be a                    *New trial.*