ELMER J. BLISS vs. NEW YORK CENTRAL AND HUDSON
RIVER RAILROAD COMPANY.

Suffolk.    November 16, 1893. — January 29, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Railroad — Evidence — Discretion — Receipt and Release
— Fraud — Action.*

If the plaintiff in an action against a railroad corporation for personal injuries has
given to the corporation, shortly after the accident which caused the injuries, a
receipt in full and a release, which he contends were procured from him by fraud
while he was in a dazed condition, the judge, in his discretion, may admit the
testimony of an expert that the plaintiff's mind might be dazed or confused as
a result of such an accident as he had described, even though the testimony does
not go so far as to show that that result was probable.

In an action against a railroad corporation for injuries occasioned to the person and
clothing of the plaintiff, who gave to the corporation, shortly after the accident
which caused the injuries, a receipt in full and a release, evidence that the oral
agreement of settlement was for a small sum, and covered merely the injuries to
the plaintiff's clothing, that the defendant's agent, who procured the plaintiff's
signatures, represented to him that the receipt was only for the injuries to the
clothing, and that the release was merely a form, whereas they both covered his
claim for personal injuries also, that the plaintiff, who at the time was in a
dazed condition, signed both papers without reading them or knowing their con-
tents, and that his personal injuries were in fact serious, will warrant a finding
that the receipt and release were procured by fraud on the part of the defend-
ant's agent.

Where one who has sustained injuries to his clothing and also to his person by a
railroad accident has been induced by fraud to execute to the railroad corpora-
tion a receipt in full and a release for both injuries, upon being paid a small
sum, which was understood by him to be compensation merely for the injuries to
his clothing, he need not return the money so received before bringing an action
for the personal injuries.

TORT, for personal injuries and damages to clothing suffered
by the plaintiff through the negligence of the defendant, while
the plaintiff was a passenger upon a train of the defendant in
Troy, New York. The answer was a general denial, payment
and satisfaction, and a release and discharge of all claims for
such injuries by the plaintiff to the defendant. Trial in the
Superior Court, before *Thompson,* J., who allowed a bill of
exceptions, in substance as follows.

The plaintiff introduced evidence tending to prove that at the
time of the accident he was a travelling salesman in the employ

of a firm in Boston; that on September 8, 1890, in the pursuit of his business, he left Troy for Albany upon a train of the defendant, which started from Troy about half-past seven o'clock in the morning; that when a short distance outside of the railroad station in Troy the car in which the plaintiff was riding was derailed and thrown against the wall of the tunnel through which it was then passing; that he was thrown partly through a window of the car, and received the injuries complained of; and that about an hour and a half after the accident he went to the office of the superintendent of the defendant at Albany.

The plaintiff then testified as follows: "When I was conducted into the superintendent's office, a gentleman sitting at the desk inquired the cost of my trousers and hat, and I replied, 'Twelve dollars for the trousers and five dollars for the hat.' He told me to take a seat, and produced two papers. He passed me one, saying, 'This is merely a form,' and the second he said was a receipt for the trousers and hat. I signed them and proceeded. I did not read the papers. They were not read to me. I was rattled, dazed, at the time. I first knew of these papers when the trial commenced yesterday. I first knew the contents of these papers in detail when I read them this morning."

On cross-examination, the plaintiff testified as follows: "The first thing that was said by any one to me when I went into the superintendent's office was said by the man at the desk, who inquired the cost of my trousers and hat. I cannot give his language. He did not ask whether I had been injured. I think he did not ask whether I had been in any accident. There was nothing the matter with my eyes at that time, so far as I know. There was nothing the matter with my eyes to prevent me from seeing what was written on the papers, except that I was dazed, I was rattled. This did not prevent me from writing down an order for goods at noon on that day. After he asked me the cost of my trousers and hat, he presented the papers at once. There is none of that my writing except the signature; that is my usual signature as near as I could get it then. I had a difficulty in signing on account of the bandage on my arm. I saw him sit down and prepare the papers. I saw him write them and then hand them to me. That is all that was said between us from the time I went in until he wrote these papers out. He inquired my name.

I did not tell him on what train I had been injured, or that I had been in any accident.   He inquired my place of business and I told him.   I did not tell him anything about the scratches on myself.   I did not say anything about scratches on my arm; the scratch on my face was evident to be seen.   I can't say that I said anything about the difficulty I had in writing.   I did not read either of the papers.   I signed them without reading them. I first learned that I had signed two papers that were releases of my personal claims at the commencement of this trial yesterday. I do not recollect which of the papers I signed first.   I did not know that one was a printed form and the other was a written bill.   I did not look at it.   There was light where I signed it. I looked at it enough to put my signature in the proper place, if it was not pointed out to me.   I saw enough to select the proper place.   I cannot say whether it was sealed."

The defendant introduced the testimony of Charles M. Bissell and Charles C. Finch, which tended to show that Bissell, the division superintendent of the defendant, and his clerk, Finch, were in the office when the plaintiff entered it; that they had been previously informed by telegram of the happening of the accident; that they had not seen the plaintiff before, nor did they know that he had been in the accident; that when he entered the office, he began the conversation with Bissell, telling him that he had been a passenger on the train which had been derailed, and that in the accident his hat had been broken and his trousers torn; that he showed a slight cut over the eye, and referred to his arm being scratched, and glass having got into his hair and scalp; that he stated that he came to the office to make a settlement for his damages; that Bissell sent for the conductor, who came and identified the plaintiff as having been in the accident; that Bissell asked the plaintiff the amount of his claim, and he said his trousers cost twelve dollars and his hat five dollars, and that he was willing to settle for seventeen dollars; that Bissell then asked him about his personal injuries, and the plaintiff said that they did not amount to anything, and that he made no claim for them; that they had some further conversation about the cost of his trousers and hat, and his position in the car at the time of the accident; that Bissell then said that, if any settlement was made, it would have to include everything,

both the loss of his trousers and hat, and the personal injuries that he might have sustained; that the plaintiff said his personal injuries were of such a trifling character that he did not think he was entitled to any amount for them, and that he was willing to sign a release discharging the company from all liability from any claim whatever that he might have, upon the payment of seventeen dollars; that Bissell inquired his name and address, and the name of his firm, and then drew up the receipt and release referred to in the plaintiff's testimony, the material parts of which are printed below;* that when the papers were drawn up a seal was placed upon the release, and Bissell explained to the plaintiff the contents of the papers, and stated that this was a settlement in full for his clothes and for personal injuries, that it was a settlement of all claims from the beginning of the world up to the present time; that he then handed the papers to the plaintiff, and told him they were for him to read and to sign; that the plaintiff took the papers, looked them over and seemed to read them; that he then signed the papers,

---

* [A.] " The New York Central and Hudson River Railroad Company, to Elmer J. Bliss, Dr. . . . Sept. 8th, For hat and pants damaged, $17.00. Also injury to person in train Belt Line 7.30 A. M. from Troy Sept. 8 for Albany which car rear one on train was off-track short distance south of depot near State St. Received in full $17.00.

" Received of the New York Central and Hudson River Railroad Company, by the hands of its treasurer, Seventeen 17 Dollars, in full for the above account. E. J. Bliss, Date Sept. 8th, 1890."

[B.] " Know ye, that I, Elmer J. Bliss, Boston, Mass., corner Kingston and Essex Streets, for and in consideration of the sum of seventeen (17) dollars, lawful money of the United States of America, to me in hand paid by the New York Central and Hudson River Railroad Company, have remised, released, and by these presents do, for myself, heirs, administrators, remise, release, and forever discharge the said New York Central and Hudson River Railroad Company, their successors and assigns, of and from all and all manner of action and actions, cause and causes of action, suits, debts, contracts, trespasses, damages, judgments, claims, and demands whatsoever, in law or in equity, which against said company has ever had, now has, or which my heirs, executors, or administrators hereafter can, shall, or may have, for, upon, or by reason of any matter, cause, or thing whatsoever, from the beginning of the world to the day of the date of these presents. In witness whereof, I have hereunto set my hand and seal the eighth day of September, in the year of our Lord one thousand eight hundred and ninety. E. J. Bliss. [Seal.]"

and Bissell and Finch witnessed them; that Bissell then paid the plaintiff the seventeen dollars; that neither Bissell nor Finch noticed that the plaintiff's arm was bandaged, or that he had any difficulty in signing the release and receipt; that Bissell did not say to him that one of the papers was a receipt for his trousers and hat, and the other a mere form; that neither Bissell nor Finch knew that the plaintiff had been to see a physician; that he did not appear to be bewildered or dazed; that he seemed to know perfectly what he was doing; that there was nothing out of the ordinary in his conduct, or different from the conduct of ordinary people coming into the office; that in his conversation with Bissell he gave accurate answers to the questions put to him; that he did not show the slightest sign of incoherency in his talk, and that he acted as a bright, energetic young man naturally would; and that he was in the office from twenty minutes to half an hour.

The plaintiff, being recalled after the defendant's evidence was in, further testified as follows: " When I entered the office of the superintendent, I did not open the conversation by stating that I was a passenger on the train that had been derailed.    I did not show Mr. Bissell the cut over my eye, and tell him I had a cut on my arm.    He did not state to me that I was settling in full.    I did not tell him that my personal injuries amounted to nothing, and that I had no claim for them.    When he presented the instrument to me, he did not state that it covered everything from the beginning of the world, or release the road from all claims.    I was not in his office for half an hour.    I was there about fifteen minutes at the most.    I do not remember the conductor coming into the office while I was there.    I do not remember that I had any conversation with Mr. Finch.    Mr. Bissell was the only gentleman I had any conversation with."

It was admitted that the plaintiff was paid by the defendant seventeen dollars upon his signing the release and receipt.

There was evidence tending to show that the plaintiff was of sufficient mental capacity to understand and appreciate the contents of the receipt and release at the time when he was in the office of the superintendent.

Dr. George L. Walton, a physician, was called by the plaintiff, and his testimony tended to show that he was an expert.    The

plaintiff's counsel asked him the following question: "Now, assuming that the plaintiff had received this nervous shock which he has testified to, in the manner which he has testified, what would you say in regard to its effect upon his physical and mental condition, its probable or possible effect, immediate effect?" To this question the defendant objected. Dr. Walton having heard the plaintiff testify, the judge allowed the question to be asked; and the defendant excepted. The witness answered, "The effects might vary more or less. I could not say in a given case what would occur. It might have very little or no effect on a man, or might have the effect of temporarily startling him, — anywhere from that to throwing him into a hysterical condition, throwing him into a condition of nervous prostration, and affecting his mind so that he would be quite irresponsible and do all sorts of foolish things; might vary anywhere between these two things."

It was admitted that, several months before the trial, true copies of the receipt and release signed by the plaintiff were shown to his counsel, and were thoroughly examined by him.

On the second day of the trial, the plaintiff's counsel tendered to Samuel Hoar, counsel for the defendant, twenty dollars in gold, which was not accepted by the defendant's counsel, he stating that he was not agent of the defendant for any such purpose. Before the arguments, the plaintiff's counsel stated to the jury that they might deduct the seventeen dollars and interest from any sum they might find for the plaintiff.

The defendant requested the judge to instruct the jury as follows:

"1. If, at the time that the plaintiff signed the release and receipt, he was of sufficient mental capacity to understand and appreciate them if he read them, and if he had capacity to read and write at that time, he cannot recover in this action.

"2. As the plaintiff has kept the money paid him upon his signing the receipt and release until the present time, he cannot now recover in this action."

The judge declined to give the instructions requested, and instructed the jury that the tender of the twenty dollars in gold made to the defendant's counsel was a proper and sufficient tender of the money paid by the defendant to the plaintiff; and that if,

at the time when the plaintiff signed the release and receipt, he was of sufficient mental capacity to understand and appreciate them if he read them, and if he had capacity to read and write at that time, he could not recover in this action, unless he was prevented from reading them, or induced not to read them, by the fraud of the defendant or its agent Bissell.

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*Samuel Hoar,* for the defendant.

*A. Hemenway,* for the plaintiff.

ALLEN, J. 1. The objection to the question to Dr. Walton is placed on the ground that the question ought to have been limited to the probable effect of the injury upon the plaintiff, and that the question which was allowed to be put went too far in asking as to its possible effect. As bearing upon the alleged fraud of the defendant's agent in procuring the release and receipt, it is obvious that the mental condition of the plaintiff was important to be considered. If his mind was clear and strong, he was more likely to understand what he was doing, and less likely to be imposed upon. He had himself testified that he was " rattled, dazed," at the time. A witness for the defendant had testified that the plaintiff did not appear to be so ; and there was other evidence in defence tending in the same way. There being this conflict of evidence as to his actual condition, it was certainly competent for the court, in its discretion, to admit the testimony of an expert that his mind might be dazed or confused as the result of such an accident as he had described, even though the testimony did not go so far as to show that this result was probable.

2. The defendant contends that there was no sufficient evidence to be submitted to the jury of fraud on the part of its agent in procuring the release and receipt. The evidence in favor of the plaintiff on this point was, in substance, that in the accident he had received a·shock which had finally resulted in serious damage to him ; that he bore marks of the direct injury upon his face ; that his mind was rattled and dazed at the time ; that while he was in this condition, about an hour and a half after the accident, in the office of the defendant's superintendent, the defendant's agent prepared the two papers for him to sign, and

passed the release to him, saying, " This is merely a form," and said that the second paper was merely a receipt for the trousers and hat; that both of these statements were false; and that he signed both papers without reading them, or knowing their contents. The witnesses for the defence gave a fuller account of what took place at this interview, with particulars which the plaintiff denied to be true, or denied having any remembrance of. The defendant's agent testified that nothing was allowed by way of payment for personal injuries, and that no claim was made for such injuries. Upon this evidence it might be argued in behalf of the plaintiff that he supposed he was receiving payment merely for the injuries to his clothing, but did not understand that he was cutting himself off from a claim for personal injuries ; that if he was in fact rattled and dazed in mind, the defendant's agent would probably have observed it; and that the insertion of the words " also injury to person," in the receipt for the damages to his clothing, and the taking of the release of all claims whatever in consideration of the payment of seventeen dollars, and in view of the declarations of the defendant's agent to the plaintiff, tended to show fraud. The weight of argument and evidence was for the jury. All that we need say is that the conclusion of the jury was warranted. *Freedley* v. *French,* 154 Mass. 339. *Peaslee* v. *Peaslee,* 147 Mass. 171, 180. *O'Donnell* v. *Clinton,* 145 Mass. 461. *Trambly* v. *Ricard,* 130 Mass. 259.

3. The defendant further contends that the plaintiff cannot maintain this action, because, before bringing it, he failed to restore to the defendant the money which the defendant had paid to him for the damage to his hat and trousers. It is plain that the plaintiff's release and receipt do not of themselves stand in the way of his maintaining the action, because, so far as they relate to his personal injury, they must now be assumed to have been obtained from him by fraud. *Rosenberg* v. *Doe,* 148 Mass. 560; *S. C.* 146 Mass. 191. *O'Donnell* v. *Clinton,* 145 Mass. 461. *Squires* v. *Amherst,* 145 Mass. 192. *Mullen* v. *Old Colony Railroad,* 127 Mass. 86. *Smith* v. *Holyoke,* 112 Mass. 517. The release and receipt are to be read as if they did not purport to discharge any claim he might have for personal injury, and by reason of the fraud the case is free from any question of the admissibility of parol evidence to vary or control the writing. But

the objection is that the retention of the money precludes him. It is true, under our decisions, that the injury to the plaintiff's person and to his clothing furnished but one cause of action, and that a recovery of judgment by him for the injury to his clothing would have barred a subsequent action for his personal injury. *Doran* v. *Cohen*, 147 Mass. 342. *Knowlton* v. *New York & New England Railroad*, 147 Mass. 606. *Sullivan* v. *Baxter*, 150 Mass. 261. *McCaffrey* v. *Carter*, 125 Mass. 330. *Folsom* v. *Clemence*, 119 Mass. 473. *Goodrich* v. *Yale*, 8 Allen, 454. *Trask* v. *Hartford & New Haven Railroad*, 2 Allen, 331. *Bennett* v. *Hood*, 1 Allen, 47. In this respect the law as established here differs from that of England, upon which the plaintiff relied in argument. *Brunsden* v. *Humphrey*, 14 Q. B. D. 141. *Darley Main Colliery Co.* v. *Mitchell*, 11 App. Cas. 127, 144, per Lord Bramwell. *Macdougall* v. *Knight*, 25 Q. B. D. 1, 8. In the present case, however, the plaintiff has recovered no judgment, and has brought no prior action for the injury to his clothing, and the question which we have to determine is whether before bringing this action he was bound to return the seventeen dollars received for the injury to his clothing, and whether the action is defeated by the omission so to return it. The defendant contends that accepting payment for a part of the injury which he sustained, and retaining the money, debars the plaintiff from maintaining an action for the other part of the injury, just as the recovery of a judgment for one part of the injury would debar him. But there are good reasons for holding the contrary doctrine. If one sues to recover for an injury, he may well be held to include in his action all that he is entitled to sue for, in respect to that cause of action. But if one is making a settlement, the same reasons do not apply, and if he cannot make a full settlement he may make a partial one, and thus eliminate one element out of the controversy. If, for example, there is an insurance on real and personal property, and a fire occurs destroying all of the property insured, or if a fire set by sparks from a locomotive engine, or other wrongful act, spreads and causes damage to real and personal property, or to different buildings of the same owner, the parties undoubtedly may settle the claim as to one piece of property, leaving it open as to the others, and in such case a payment for so much as has been agreed on cer-

tainly would not debar the owner from recovering what he is entitled to in respect to the rest. Now, if such was the oral agreement of settlement as to a part of the loss, and the owner was by fraud led to sign a receipt for his whole claim, and if he afterwards sues for that part of his loss which has not been paid for, and is able to set aside and avoid the terms of his receipt by reason of the fraud, there is no good reason why the payment for his loss upon one piece of his property should debar him from recovering for the loss upon the rest, even though he retains the money so paid to him. Why should he pay it back, when it represents only the sum agreed on for his compensation for that portion of his loss which he no longer seeks to recover for? So here. The plaintiff must now be deemed to have received the seventeen dollars for the injury to his clothing alone. Thus much was adjusted between the parties and paid for. The plaintiff, although he included a claim for damage to clothing in his declaration, does not now seek to recover for that loss, or to avoid the settlement which he says he actually made with the defendant's agent. On the other hand, he stands to and affirms all that was included in the settlement actually made. If it was understood at the time that the payment was received only for the injury to his clothing, and that no claim for personal injury was settled for or released, and if the release and receipt were by fraud so phrased as to cover that claim also, and if they are avoidable by reason of the fraud so far as the claim for personal injury is concerned, the plaintiff was under no obligation to return the money received by him for the injury to his clothing before bringing his action for the personal injury. *Mullen* v. *Old Colony Railroad*, 127 Mass. 86. *Smith* v. *Holyoke*, 112 Mass. 517. *Bartlett* v. *Drake*, 100 Mass. 174. *Walker* v. *Swasey*, 2 Allen, 312. *Roberts* v. *Eastern Counties Railway*, 1 F. & F. 460, cited with approval in *Lee* v. *Lancashire & Yorkshire Railway*, L. R. 6 Ch. 527, 537.

*Exceptions overruled.*