charge of such articles), we are unable to find any evidence which would justify a jury in finding that the insured died on the 20th day of August, 1897. The general rule is that the proof of the death of a person once living is incumbent on the party who asserts the death, for it is presumed that the person still lives until the contrary is proved (O'Gara v. Eisenlohr, 38 N. Y. 296, 299, and authorities there cited), and this presumption continues at common law during a period of seven years, where there are no tidings of the absent one. In the case before us the insured was last seen in a safe place. He was in his office in the city of New York, and the only evidence that he was at Brighton Beach on the day mentioned is furnished by the finding of his clothes in one of the rooms on the bathing pavilion, and even this evidence is materially weakened by the fact that his watch and chain are not accounted for. It is undoubtedly true that the length of time which must elapse in order that the presumption of death may arise may be abridged by proof of facts and probabilities that life has been destroyed, that it may arise whenever the facts of the case warrant it, and that, when one last heard from was in contact with some specific peril, that circumstances may raise a presumption of death without regard to the duration of the absence (Straub v. Lodge, 2 App. Div. 138, 37 N. Y. Supp. 750); but in the case at bar none of these features are present. The insured, when last heard from, was in a safe position; and, even had it been certain that he was at Brighton Beach on the day mentioned, the peril of bathing at a public bathing place in the presence of large numbers of people, on a still, clear day, with life lines stretched, and a man on guard in a boat, is not such a specific peril as to bring the insured within the exception to the general rule, under the conditions which were shown to exist on the day mentioned. It is clearly not the law of this state that death may be established on evidence so slight as that introduced by the plaintiff in this action, and the rule emphasized by Laidlaw v. Sage, 158 N. Y. 73, 97, 52 N. E. 679, makes it improper to submit to the jury evidence which is insufficient to sustain the claim of the party upon whom the onus rests.

The exceptions should be overruled, and judgment in favor of the defendant entered, with costs. All concur, except SEWELL, J., taking no part.

---

(57 App. Div. 265.)

### YAPLE v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Third Department. January 24, 1901.)

1. CONTRACTS—RESCISSION—RESTORATION OF CONSIDERATION.

In an action for injuries to the person and property of plaintiff, defendants having pleaded a release, plaintiff could properly reply that such release was procured by deceit, and assert that he did not know that he was signing a release for personal injuries, and that the release was only signed for injuries to the property, without offering to restore the consideration of the release.

2. ACTION—SPLITTING CAUSES OF ACTION.

Though one sues for injuries to his person and property, caused by the same act of negligence, in one action, the fact that he has settled

for the injuries to his property does not bar his right to prosecute the action for injuries to his person.

Kellogg and Edwards, JJ., dissenting.

Appeal from special term, Sullivan county.

Action by Frank Yaple against the New York, Ontario & Western Railway Company. From a judgment for defendant, plaintiff appeals. Reversed.

Argued before PARKER, P. J., and MERWIN, SMITH, KELLOGG, and EDWARDS, JJ.

W. F. O'Neill, for appellant.

Geo. H. Carpenter, for respondent.

MERWIN, J. This action was brought to recover damages sustained by the plaintiff by reason, as he claims, of the negligence of the defendant in the operation of one of its trains on or about July 16, 1896. It is alleged in the complaint that while the plaintiff, with a horse and wagon, was attempting to cross the defendant's track at a highway crossing, a train of defendant, coming at a dangerous rate of speed, and without warning, ran upon and over the plaintiff and his horse and wagon, killing the horse, injuring the wagon, and inflicting upon the plaintiff himself serious and permanent injuries upon the head and back, by reason of which losses and injuries and the expense incidental thereto the plaintiff has suffered damage in the sum of $10,000. The defendant, in its answer, among other things, sets up that on or about the 10th of April, 1897, the plaintiff, in consideration of the sum of $200 to him paid by defendant, executed and delivered to defendant a release of all claims he had against it, and particularly for any personal injuries and damage to personal property sustained at the collision referred to. The plaintiff, in reply to this, admitted on information and belief that he made and executed a release in the terms and substance the same as set forth in the answer, and alleged that at the time it was executed he was suffering great bodily pain, and was in such condition of mind that he was incompetent to appreciate the character of the instrument; that, if he did execute a release of the cause of action alleged in the complaint, the same was obtained from him by deceit and misrepresentation while he was so enfeebled and incapacitated to properly understand the effect and meaning of the instrument he signed, and that he never intended to execute a release to the defendant for his personal injuries. The case was brought on for trial before the court and a jury. After the opening of the case by the counsel for the plaintiff, the counsel for the defendant moved upon the opening and on the pleadings to dismiss the complaint upon the ground that there was no allegation that the money received as consideration for the release had been restored or offered to be restored. It was stated in the opening, among other things, that the plaintiff did not know that he was signing a release for his personal injuries, and that the release was only signed for the horse and wagon, which were worth more than he received; that the plaintiff claimed nothing now for damages on the horse and wagon; that the release was obtained by fraud or false representations.

The court held that the plaintiff could not recover for his personal injuries without restoring or offering to restore the money he had received, and therefore granted the motion of the defendant for a dismissal, to which ruling the plaintiff excepted. The court, with a view of giving the plaintiff an opportunity to amend his pleadings if he so desired, gave him the option of arresting the trial on payment of certain costs within a specified time, the court evidently intending to place the plaintiff in a position either to review by appeal, if he so desired, the ruling of the court on the dismissal, or to amend, if he so desired, on terms and offer to restore. The plaintiff did not accept the latter opportunity, but appealed, and the question now is whether the exception of the plaintiff to the ruling of the court dismissing the case is a good one. This question must be determined upon the assumption that the facts alleged by the plaintiff in his pleadings or in the opening are true. Clews v. Association, 105 N. Y. 399, 11 N. E. 814. So that the court in effect held that, although the release was obtained by fraud, and the plaintiff only settled for the damages to his horse and wagon, and received the money only for such settlement, still that he could not recover for his personal injuries without restoring or offering to restore the money. There is no doubt about the right of the plaintiff to impeach the release for fraud. O'Meara v. Railroad Co., 16 App. Div. 204, 44 N. Y. Supp. 721; Kirchner v. Machine Co., 135 N. Y. 182, 189, 31 N. E. 1104. The defendant, however, says that the rule that a party seeking to rescind a contract for fraud must first restore or offer to restore what he has received under it, is applicable to this case. The Kirchner Case, above cited, was an action to recover damages for certain alleged trespasses, and the defendant proved a general release covering the trespasses complained of and other matters connected with the same transaction, and it was said (page 189, 135 N. Y., and page 1106, 31 N. E.):

"If the plaintiff can show that by a mutual mistake of the parties, or, what is equivalent, a mistake on his part and fraud on the part of his adversary, the present cause of action is embraced in the release, contrary to the intent of the parties, or contrary to his intent in case fraud is proven, he is entitled to an instruction to the jury to the effect that the release does not bar his right to recover."

The plaintiff, under the reply and the statements in the opening, had the right to show that the contract in fact made between the plaintiff and defendant was not correctly embodied in the release, so that it was not a rescission of the contract that the plaintiff sought, but, in effect, reformation of the release. As said in the Kirchner Case (page 190, 135 N. Y., and page 1107, 31 N. E.):

"This is not the case of an attempted rescission of a contract upon the ground of fraud, and the plaintiff is not, therefore, under any obligation to return what he has received, or to tender restoration. He is not seeking to disaffirm the agreement actually made, but merely objecting to the application of the written evidence of it to a subject which the parties did not intend to include in it. Welles v. Yates, 44 N. Y. 525."

In Bliss v. Railroad Co., 160 Mass. 447, 36 N. E. 65, it was held that:

"Where one who has sustained injuries to his clothing and also to his person by a railroad accident has been induced by fraud to execute to the rail-

road corporation a receipt in full and a release for both injuries upon being paid a small sum, which was understood by him to be compensation merely for the injuries to his clothing, he need not return the money so received before bringing an action for the personal injuries."

But the defendant says that the plaintiff had but one cause of action for all the injuries, though different items for damages, and that a settlement and release for some of the items would bar the whole claim, the same as if there was a suit and recovery for such items. That question was also considered in the Bliss Case, and a conclusion reached adverse to the contention of defendant. It was said that, if one sues to recover for an injury, he may well be held to include in his action all that he is entitled to sue for in respect to that cause of action, but, if one is making a settlement, the same reasons do not apply; that, if he cannot make a full settlement, he may make a partial one, and thus eliminate one element out of the controversy. This view seems to be quite reasonable. The foregoing considerations lead to the conclusion that the trial court erred in holding that, although the facts were as the plaintiff claimed them to be, still he could not recover for his personal injuries without restoring the money he had received. The judgment must, therefore, be reversed.

Judgment reversed, and new trial granted; costs of appeal to appellant to abide the event.

PARKER, P. J., and SMITH, J., concur.

KELLOGG, J. (dissenting). The complaint is for negligence of the defendant whereby it is alleged plaintiff lost a horse and suffered personal injuries. The answer alleges, among other things, an accord and satisfaction and written release for the cause of action alleged, duly executed by plaintiff. On application of defendant the special term directed plaintiff to make a verified reply to that portion of the answer setting forth the release. The reply was made and served, and admitted the making of the release in "terms and substance" set forth in the answer, "but denies that the said release covers and includes the cause of action set up in the complaint in this action." The court at special term required a further and more explicit reply, and plaintiff then served one in which he, for the purpose of avoiding the effect of the release, in substance said that at the time the release was executed he was in a condition of mind which made him unfit to appreciate the character of the instrument; "that, if he did execute a release of the cause of action alleged in the complaint, the same was obtained from him by deceit and misrepresentation while he was so enfeebled and incapacitated to properly understand the effect and meaning of the instrument signed, and that he never had intended to execute a release to the defendant for his personal injuries as set forth in the answer." This presented an issue well defined. Was the release procured at a consideration of $200 paid procured by fraud? So the issue remained down to the trial. Under this issue no proof could have been made going to show that the $200 was paid as a partial remuneration,—the value of the horse or horse and wagon. Possibly, if no reply had been served,

such proof would have been proper; but to make it so the plaintiff would first need to get his reply off the record, or have it amended to fit the new facts alleged. I, however, very seriously doubt the propriety of permitting such a complete change of base on the trial. In fairness, pleaders should be held to the issues tendered by their pleadings. This was the situation when plaintiff opened his case to the jury. What he said in that opening the record does not disclose, except that he stated the release "was only signed for the horse and wagon."

Motion was made by defendant's counsel for a dismissal "for the reason that there is no allegation in the complaint that plaintiff restored or offered to restore the consideration for the release. The Court: I understand this motion is made not only on the opening, but on the pleadings. Mr. Carpenter: On the opening and the pleadings." Some discussion then was had between court and counsel of a colloquial nature. Then counsel for plaintiff said: "I should ask, under the circumstances, to withdraw a juror, and make an amendment." Some further talk was had, and counsel for plaintiff then said: "I shall withdraw a juror, but first I ask to go to the jury on all the facts, and upon the question whether we are bound to restore this $200,—the money mentioned in the release,—before we brought the action, or at any time." Denied. Exception. "I ask to withdraw a juror. The Court: The only question is as to whether any terms should be imposed. Mr. O'Neill: I think not." The counsel for defendant objected to the allowance of plaintiff's request to withdraw a juror without payment of costs, and the court said: "I am inclined to think the only terms I shall impose will be the costs of the trial. Mr. O'Neill: I wish you would put in the order that you intend to make the amount to be paid within 30 days, or the complaint dismissed. The Court: I will make this order in the case that you may withdraw a juror on payment of the trial fee. * * * In the event of your failure to pay that within 30 days after notice of entry of the order, an order may be entered granting the motion dismissing the complaint." Thereupon plaintiff withdrew a juror, and the mistrial was perfected. There was no trial, no decision reached, and no judgment,—as complete a mistrial as though the case had been submitted to a jury, and there had been a disagreement. There is in the case nothing to review by reason of the appeal from the judgment, any more than there would have been on the happening of any other mistrial. If the case had been dismissed, it would have been otherwise. The appeal must be treated as an appeal from an order simply. The dismissal here provided for in the order was a condition attached to the granting of plaintiff's request to withdraw a juror, and he accepted the favor he asked with the condition attached. He took the benefit of the allowance of his request to withdraw a juror and postpone the trial. He even asked to have this condition attached to the order he was seeking. The order was wholly of his own procuring. It makes no difference just what were the inducements which led him to seek the order. He had the right to refuse the order. But he asked for it, and it was granted. It was not duress that drove him. He was confronted with threats of a dismissal, but that is hardly duress, or subject for re-

view.  He piloted his own case, and secured, through court clemency, the order.  Failing to comply with the conditions which he suggested to be placed in the order within the time he suggested, that failure operated to dismiss his action.  The court could not give plaintiff the right to appeal in case it was wrong in placing for choice the two horns of a dilemma.  It was held in Hooper v. Beecher, 109 N. Y. 609, 15 N. E. 742, that "a party in whose favor a judgment is entered or an order made cannot be aggrieved by it, and he is, therefore, in no position to claim the right of appeal."  Traffarn v. Getman (Sup.) 3 N. Y. Supp. 867, is a general term decision.  The justice in that case returned that the defendant, against whom the decision was rendered, instigated the judgment.  The court held that he had no right to appeal.  Follett, J., said:  "I am not prepared to hold that the justice's judgment is valid, but I am clear the defendant had no right to appeal."  Austin v. Wauful (Sup.) 13 N. Y. Supp. 184, seems to be full authority for the determination of the case here considered.  In the opinion Martin, J., says:

"In the case at bar the plaintiff, at the close of the trial, instead of standing upon his exceptions to the rulings of the court, and permitting it to dismiss the complaint, and then relying upon the questions of law in the case, asked leave to amend his complaint, and that the trial should be postponed. The court allowed him to amend, and postponed the trial at his request.  As a condition to such amendment and postponement, the court required the plaintiff to pay twenty dollars costs and witness fees, and directed that in default of an amendment and payment of costs that his complaint should be dismissed.  While the plaintiff excepted to the conditions imposed upon granting the order, he did not refuse to accept the order which postponed the trial and gave him the right to amend.  The effect of this procedure was, we think, to effect an abandonment of the proceedings had on the trial, and leave the order as though it had been made before any trial had been had."

This was, like the case at bar, an appeal from a judgment rendered on failure to comply with the order within 30 days.  Weichsel v. Spear, 47 N. Y. Super. Ct. 223, was affirmed in 90 N. Y. 651. There leave to amend the complaint was granted on plaintiff's request, and the court gave leave to amend in four days on payment of costs.  On failure to amend and pay within the designated time, judgment of dismissal was entered as the order provided.  On appeal the court said he was bound by the order; that he might have refused it, not being satisfied with the conditions; that the dismissal was, under the circumstances, to be treated as a dismissal at his own request, and the only relief he had was to amend, and then proceed with the action.  Grunberg v. Blumenlahl, 66 How. Prac. 62, Canary v. Knowles, 41 Hun, 542, Dambmann v. Schulting, 6 Hun, 29, are all cases illustrating the same doctrine.  I see nothing in this case which distinguishes it from those cited, and on principle, and following the uniform practice, the plaintiff should be held to be estopped from attacking the order procured at his own instance, and for his own benefit, and under which he obtained time to amend by the usual practice of withdrawing a juror.

The judgment should be affirmed, with costs.

EDWARDS, J., concurs.