# W. H. KOFFMAN, Appellant, v. SOUTHWEST MISSOURI ELECTRIC RAILWAY COMPANY, Respondent.

### St. Louis Court of Appeals, April 29, 1902.

1. **Contracts: FRAUD: ACTION: EQUITY: JURISDICTION: PAROL EVIDENCE: TRIAL: NONSUIT.** Plaintiff was injured by collision with a street car, and brought action at law against the company on its failure to perform an alleged agreement by which it was to furnish a physician to treat and cure plaintiff's broken leg so as to make it well and sound, so that plaintiff could walk and perform manual labor. Defendant produced a written agreement, signed by plaintiff, by which defendant merely agreed to pay plaintiff's expenses, doctor and board bills, until he was able to get home: *Held*, that plaintiff was not entitled to show that he signed the agreement under a mistake as to its contents, produced by misrepresentations made to him by the agents of the railway company, when he was too weak to read, with the dishonest intention of securing his signature to an agreement different from the one agreed to verbally; as the fraud which renders a contract void at law relates to the execution, and not misrepresentations as to the subject-matter.

2. ———: ———: ———: **RELEASE OF, SETTLEMENT: STATUTORY CONSTRUCTION: EVIDENCE: PLEADING.** In the case at bar, the evidence was not admissible under section 654, Revised Statutes 1899, providing that, when a release or settlement is pleaded in bar of plaintiff's action, plaintiff may show fraud in its procurement, as plaintiff's action was not founded on the injury from collision.

3. ———: ———: ———: ———: ———: ———. In the case at bar, plaintiff, who had been injured by collision with a car, sued the railroad company for failure to fulfill an alleged agreement to furnish him a physician who would treat and cure his leg until he could walk and perform manual labor, and defendant produced a written agreement, signed by plaintiff, by which defendant had merely agreed to furnish a physician, and on refusal to permit plaintiff to show that such writing was procured by certain mis-

representatons as to its contents, he suffered a nonsuit. *held*, that, in view of the voluntary nonsuit, plaintiff could not urge that, as there was evidence that defendant actually furnished a physician who treated plaintiff carelessly, he was entitled to go to the jury, on the question of an implied undertaking to furnish proper treatment.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

AFFIRMED.

## STATEMENT OF THE CASE.

According to the petition in this case, Koffman's leg was broken by a collision with one of the defendant railway company's cars, due to its negligent handling by the employees in charge of it. The petition further states that immediately after the accident the railway company caused its regular physician and surgeon to attend the plaintiff while he was in an unconscious condition, and in order to secure a settlement of the plaintiff's claim against it for damages on account of the injury, afterwards entered into a contract with him by which it undertook and agreed, in consideration of his releasing it from any claim for damages by reason of said injury, "to furnish the services of a physician and surgeon to plaintiff for his said injury and to treat and cure the same so as to make his broken leg well and sound, so that plaintiff could walk upon it and perform manual labor as before said injury, and to pay all the expenses on account of doctor and board bills until plaintiff was able to travel to his home in Neosho, Missouri, and to furnish him transportation to his said home." The petition then avers that pursuant to said contract the railway company, without giving plaintiff any option or choice as to what physician should attend him, put their own physician in

charge, who continued to wait on him as the agent and servant of the defendant company and under its control and direction.

The grievance complained of is that said surgeon set plaintiff's leg negligently and without ordinary skill, so the ends of the broken bones overlapped and knit together that way, causing the broken limb to be crooked and shorter than the other.

The defendant answered the allegations of the petition by stating the physician who treated the plaintiff was competent and skillful and treated the plaintiff's case skillfully, and that the imperfect healing of his limb was due to his own negligence. The answer further stated that said physician was not employed by the company regularly, but only now and then called on to treat cases and paid a fee for each case. It further stated that the broken limb was really set by two other physicians and not by the one furnished by the company.

But what we are particularly concerned with in the answer is the following: .

"That on September 3, 1900, out of sympathy for plaintiff and for the purpose of saving any future litigation with plaintiff in regard to his said accident (notwithstanding the defendant was under no obligations or liability to plaintiff on account of said accident) defendant entered into a written agreement with plaintiff by which plaintiff agreed with defendant that in consideration of the release of all claims by plaintiff against defendant on account of said injury, that defendant agreed to pay plaintiff's doctor bills and board bill at Webb City until such time as plaintiff could be transferred home, and to pay transfer of plaintiff to his home at Neosho, Missouri."

A replication was filed in which the plaintiff denied he executed the written contract charged in the answer, denied every allegation in the answer and

pleaded the following defense in the nature of a confession and avoidance:

"Plaintiff further states that on the day after the making of his verbal agreement with defendant company, as charged in his petition, and while plaintiff was in bed suffering great physical pain, H. F. Dice, who was attending upon him as the agent and servant of defendant company under their said contract, produced a written agreement which he represented to plaintiff contained and embodied the exact terms of their said agreement and that said written agreement contained an agreement by the said company to furnish a physician to treat plaintiff and that said company would cure plaintiff's injuries. That plaintiff was at said time unable to read and the said written instrument was not read over to him. That upon the representations of said H. F. Dice, which were believed and relied upon by plaintiff, plaintiff was induced to sign a written instrument, but plaintiff has no knowledge of its contents or whether it is the one charged by defendant in his answer. That the signature of plaintiff to said written instrument was so obtained by the false and fraudulent representations of the said defendant and by causing and inducing plaintiff to believe that he was signing one kind of an instrument when in fact he was signing another and different one."

On motion of the defendant the circuit court struck out the special plea contained in the replication in regard to the written contract, and an exception was saved to that ruling. The plaintiff was the only witness introduced. He testified as to the accident in which his leg was broken, and that when he recovered consciousness the day after, he was at the Savoy Hotel in Webb City and there got acquainted with the superintendent of transportation of the defendant company and its surgeon. He was then asked what ar-

rangement was made between him and the railway company in regard to the treatment of his injury, when the following occurred:

"By Mr. Halliburton for defendant:

"Q. The contract you attempted to make was finally signed up by you? A. I signed a paper of some kind. I don't know what it was.

"Q. It was a contract or release that you signed, wasn't it? A. It was aimed for a release, but I don't know what was in it.

"Q. (Showing a paper to witness). This is your signature to this contract, isn't it? A. It looks like my handwriting, sir."

The defendant objected to any oral testimony about the contract, for the reason that it was in writing, and the court sustained its objection. Thereupon the plaintiff offered to make the following proof:

"We now offer to prove by this witness that on the first day of September, 1900, Charles Baker, as manager of the Southwest Missouri Electric Railway Company, in the company's name and for them, made a verbal contract and agreement with the plaintiff in which the said company for the purpose of saving itself harmless and of settling all controversies as to its liability for plaintiff's injury, and the amount of his injury, and in consideration of plaintiff releasing and discharging said company from all claims, actions, demands and controversies on account of his said injury, entered into a verbal contract whereby it contracted in consideration of the said release and discharge by plaintiff of his said claim for damages on account of said injuries, to furnish the plaintiff with the services of a physician and surgeon to attend upon and treat and cure plaintiff of said injury, so as to make his broken leg well and sound so that plaintiff could walk upon it and perform manual labor, and to pay all expenses on account of board bills and

nurse bills until plaintiff was able to travel to his home in Neosho, Missouri, and to furnish him transportation to his said home. We offer further to prove by this witness that Charles Baker at that time was duly authorized by the company to make such contract; that he had been held out by the company in the past as its general superintendent and had been in the habit and practice of making such contracts with the knowledge and consent of the company."

This testimony was objected to by the defendant and excluded.

Koffman was next asked to state the manner and circumstances in which his signature to the written instrument was obtained, his condition at the time, whether he was able to read and write, and the representations that were made to him. This question was objected to because there was nothing in the pleadings to authorize such proof and the objection was sustained.

Plaintiff's counsel then made the following offer of testimony:

"The plaintiff offers to prove by this witness that prior to the third day of September, 1900, H. F. Dice had been attending upon the plaintiff as a physician under the direction of the defendant company, and that on the third day of September, 1900, H. F. Dice produced this written instrument when plaintiff was suffering great bodily pain and incapable of knowing or understanding the terms and conditions of the contract itself; that plaintiff was unable to read without the aid of his spectacles, which he did not have, that Dice requested plaintiff to sign said written agreement, and plaintiff inquired of him if it was the same agreement that was entered into between him and the company on the first day of September, 1900, stating to Dice at the time that he was unable to read it, and that Dice assured him that it contained all the terms

and conditions of the agreement that had been entered into previously between him and the company, stating over among other things that the contract contained among other things the agreement by the company to furnish him a physician to cure and heal his broken leg so that it would be well and he could perform manual labor upon it; that believing and relying upon the representations so made by Dice, and that the instrument in question was the agreement that had been previously made, plaintiff attached his signature thereto, without reading or hearing it read."

The written instrument was introduced by the plaintiff, and is as follows:

"Webb City, Mo., Sept. 3, 1900.

"*Know all men by these presents,* that I, William H. Koffman, of and for the sole consideration of the payment of all expenses incurred and doctor and board bills until I am able to travel to my home in Neosho, Missouri, transportation to my home also to be paid by the Southwest Missouri Electric Railway Company, the receipt of which is hereby acknowledged, do hereby release and forever discharge said Southwest Missouri Electric Railway Company, its successors and assigns, from all causes of action and suits, controversies, claims and demands whatsoever for or on account of injuries received to the person or damage caused to the property of the signer hereof, or either of them, on or about the thirty-first day of August, 1900, on the Southwest Missouri Electric railway line near Carterville or on the company's right of way between Carterville and Webb City, Missouri.

"It is expressly understood and agreed that the payment of the said sum of the above-named expense is the sole consideration of this release and that the

Vol 95 app—30

consideration stated herein is contractual and not a mere recital, and all agreements and understandings between the parties are embodied and expressed herein. In testimony whereof I have hereunto set my hand and seal the day and year first above written.

"WILLIAM H. KOFFMAN.    (Seal.)

"Witnesses to signature:
    "Mary Shire.
    "L. K. Winchester.
    "H. F. Dice."

After the introduction of said instrument, plaintiff's counsel asked him the following question:

"Q. At the time this contract was signed, on the third day of September, what was said about who was to furnish the physician? What was said between you and Doctor Dice or Mr. Baker, or whoever you made the contract with? What was said as to who was to furnish the physician at that time?"

The question being objected to on the ground that the contract spoke for itself, plaintiff offered to prove the following facts by the witness:

"The plaintiff offers to prove that when the contract was originally entered into on the first day of September, and on the next day, on the day the contract was signed up, it was agreed between the plaintiff and defendant company that among the stipulations of agreement which they entered into, the company was to furnish a physician that would carry him through his illness and cure him up, and agreed to furnish a physician that would carry him through until he was cured and as well as before. We also offer to prove by this witness that he and defendant's agent, Doctor Dice, on behalf of the defendant company, had a separate oral agreement that the defendant company would furnish him with a physician to wait upon him in his injury and cure him of the same and in

carrying out the terms of the written agreement that the defendant company gave the plaintiff no option or choice about choosing a physician, or whom he might have, but furnished to him its own regular physician, Doctor Dice. The plaintiff further offers to show that in carrying out this the company took upon itself the burden of furnishing a physician and refused to permit or let the plaintiff employ any physician that he might choose, but compelled him to take the one furnished by it.''

The court excluded the offer and assigned this reason for his ruling:

''The court holds that so far as the defendant railway company is concerned, the testimony is not admissible; that the written contract identified by plaintiff and offered in evidence, by its terms embodies all of the obligations on the part of the company and that no suit or action can be maintained on a prior or contemporaneous verbal agreement until that contract is set aside in equity, and that it can not be set aside by pleading such fraud in the reply. The objection is sustained.''

Thereupon the plaintiff took a nonsuit with leave to move to set it aside, and after his motion had been made and overruled, appealed from the judgment entered in favor of the defendant.

*John T. Sturgis* and *Horace Ruark* for appellant.

(1) ''It has been repeatedly held in this State, and in fact is a general rule of practice throughout the courts of our country, that the issues raised by a reply impeaching the integrity of the release pleaded by an answer, as having been obtained by fraud, might be tried in an action at law without resort to a court of equity, for the cancellation of such release.'' Homuth v. Railroad, 129 Mo. 646. And the law is well

settled in this State that where the facts stated are
such as render the instrument signed void and not
merely voidable, as by misreading or misquoting the
contents to one not capable of reading himself, then
such fraud may be shown in an action at law, and is
for the jury to try.   There is a distinction between
obtaining an instrument by fraud and obtaining it by
undue influence.   Hancock v. Blackwell, 150 Mo. 440,
453; Girard v. Car Wheel Co., 123 Mo. 358; Och v.
Railroad, 130 Mo. 41-45, and dissenting opinion of
BARCLAY, pages 65-71.   (2) A written contract pro-
cured by fraud as alleged in the plaintiff's reply does
not merge a prior verbal agreement between the par-
ties.   If parties make a valid verbal agreement and
subsequently enter into a void written agreement in
regard to the same subject-matter, the void written
agreement does not merge the valid verbal one. Har-
vey v. Morey, 45 Pac. 383; Thurston v. Percival, 1
Pick. 415; Loan Co. v. Towner, 13 Conn. 245; Baxter
v. Downer, 29 Vt. 412.   (3)   Where a party fraudu-
lently procures the signature of another to a written
instrument which does not contain the contract between
the parties, but a different one, he can not be per-
mitted to avail himself of that contract, but must stand
by the one originally entered into.   Wright v. Mc-
Pike, 70 Mo. 175; Ravensway v. Ins. Co., 89 Mo. App.
73; Cole Bros. & Hart v. Wiedmair, 19 Mo. App. 7.
(4)   But in any event the defendant company took
upon itself the burden of furnishing the physician.
Such is its own interpretation of the contract.   It
might have stood on the letter of the contract and re-
fused to furnish a physician, but it did not do so.   It
not only assumed it as a burden, but enforced it as a
right, giving plaintiff no choice or option in the matter.
Having contracted to pay the expense, it sought to re-
lieve itself of this by forcing on plaintiff its own phy-
sician and then claim exemption from liability because

it had not contracted to do so. Hannon v. Siegel, Cooper & Co., 60 N. E. 597; Railroad v. Artist, 60 Fed. 367. (5) One who has by contract or otherwise assumed certain liabilities can not free himself therefrom by the employment of an independent contractor. 16 Ency. Law (2 Ed.), p. 204, cases cited; Cherry v. Railroad, 61 Mo. App. 303; Jones v. Railroad, 89 Mo. App. 653.

*McReynolds & Halliburton* for respondent.

(1) The affirmative part of plaintiff's replication was properly stricken out, and the lower court committed no error in refusing to hear evidence to contradict or vary the written contract. The written contract was properly pleaded in defendant's answer and plaintiff's replication was not verified; in other words, plaintiff did not plead *non est factum,* so that the written contract as pleaded by defendant stands admitted on the pleadings. R. S. 1899, sec. 746; Rothschild v. Frensdorf, 21 Mo. App. 318; Smith M. P. Co. v. Rembaugh, 21 Mo. App. 390; Beck & Paul L. Co. v. Obert, 54 Mo. App. 240; Kingman & Co. v. Shawley, 61 Mo. App 54. (2) Plaintiff must allege every substantial fact which he must prove to maintain his action. In this case it was necessary for plaintiff to allege and show that the written contract did not contain the whole contract between plaintiff and defendant before he could have recovered in this action, and should have done so in his petition. Harrison v. Railroad, 50 Mo. App. 336; Laritz v. King, 93 Mo. 519. (3) A person who is *sub juris* will not be permitted to avoid his written contract by simply showing he did not read it or hear it read. Taylor v. Fox, 16 Mo. App. 527; Rothschild v. Frensdorf, 21 Mo. App. 323; Kingman & Co. v. Shawley, 61 Mo. App. 61. (4) Plaintiff can not by his reply have a jury correct or reform the written

contract and insert therein the additional agreement set out in his petition that does not appear in the written contract. Equity alone has jurisdiction to correct or reform the contract. Taking the petition, answer and reply and they show that plaintiff is evidently trying to have the written contract reformed by the jury instead of by a court of equity, which can not be done, and a reformation in equity can not be had by a reply. Tesson v. Ins. Co., 40 Mo. 33; Shields v. Hickey, 26 Mo. App. 194; State ex rel. v. Jones, 131 Mo. 194; Ridgway v. Herbert, 150 Mo. 606. (5) Plaintiff's petition does not state any cause of action against this defendant, in this, that the relation of master and servant did not exist between the railroad company and Dr. Dice. And the doctrine of *respondeat superior* does not apply. Morgan v. Bowman, 22 Mo. 548; Clark's Adm'r v. Railroad, 36 Mo. 22; Dillion v. Hunt, 82 Mo. 150.

GOODE, J.—The two assignments of error on account of the circuit court's action in striking out those allegations of the replication which stated facts in avoidance of the written contract and in excluding the testimony offered in support of said allegations, involve the same question and may be considered together. Indeed, the rejected portion of the replication and the rejected proof supplement each other in elucidating the theory on which the appellant demanded a recovery. He sought to get around the effect of the written contract by showing he signed it under a mistake as to its contents, produced by misrepresentations made to him by the agents of the railway company when he was too weak to read, with the dishonest intention of inveigling him into affixing his name to terms different from those previously agreed to verbally by him and said agents. The purport of the agreement to which he assented was, he says, that the railway company

would furnish a surgeon to treat and cure respondent so he would be well and sound. Instead of that agreement, the one signed merely bound the company to pay his expenses, doctor and board bills until he was able to go home and to furnish him transportation to his home.

It is contended here, as it was in the circuit court, that the appellant was entitled to maintain this action on an agreement verbally made between himself and the company's agents, notwithstanding he signed the instrument pleaded in bar, and to avoid that defense by showing his signature was fraudulently procured.

In their cognizance of actions and defenses involving fraud, courts of law often override a document purporting to be a contract, on proof that its execution was induced by some trick or deceit which misled the complaining party in regard to its terms, so that he did not know the legal effect of what he was signing; but do not, on such proof give effect to the agreement as orally made, or in other words, reform the instrument, as courts of equity do. When a written agreement is disregarded and held for naught in legal actions, that course is taken on the theory that it was executed under a misapprehension created by the party claiming the benefit of it, and that it purports to be an agreement which in point of fact was not made, since the minds of the parties never met, one of them believing he was subscribing a document of a different tenor from the one actually subscribed, which is therefore void or voidable at the deceived party's instance. It is very common for defenses on this ground to be tolerated in actions at law arising out of contracts; as for instance, that a note or bill of exchange was fraudulently procured. Hahn v. Bradley, 92 Mo. App. (St. L.) 399; Foster v. Mackinnon, 4 L. R. C. P. 704; Whitney v. Snyder, 2 Lansing (N. Y.) 477; Van Valkenburg v. Rouk, 12 Johns. 337.

It must be borne in mind, in considering this subject, that the common law adheres more rigidly to the rule against varying or contradicting written instruments by parol evidence than does equity. That rule was originally a part of the common-law procedure and not of equity, and exceptions are admitted in equity practice which the law will not admit. The reception of parol testimony to show a party's disability to contract, or that he was led to sign a document by circumvention or trickery, is not thought to infringe the rule, because the effect of such testimony is not to vary or contradict the writing, but merely to show the subscribing party never assented to its terms. Or, when the writing is a receipt or other memorandum showing on its face it was not intended to be a complete expression of the agreement between the parties, the rule is not violated by admitting oral testimony to show the full terms of the agreement. But where the instrument contains a complete contract, not suggestive of any omitted terms, it can not be altered, contradicted or new stipulations engrafted on it in an action at law, even though there was another term agreed on by the parties as a part of the contract but not carried into the instrument, as was ruled in Tracy v. Union Iron Works, 104 Mo. 193, in which the doctrine was learnedly discussed.

It often occurs that acquittances such as we find in this case are held void, when set up as defenses, on testimony showing they were fraudulently obtained, and judgment entered for the plaintiffs on the cause of action attempted to be released. Vautrain v. Railroad Co., 8 Mo. App. (St. L.) 539; 78 Mo. 144; Girard v. Car Wheel Co., 123 Mo. 358; Och. v. Railroad Co., 130 Mo. 27; Hancock v. Blackwell, 139 Mo. 440; 150 Mo. 245; Chicago, Rock Island & Pac. R. R. Co. v. Lewis, 109 Ill. 120; Ryan v. Cross, 68 Md. 377; Sobieski v. Railroad Co., 41 Minn. 165; Butler v. Railroad Co., 88

Ga. 594; Smith v. Steamship Co., 99 Cal. 462; Shaw v. Weber, 79 Hun (N. Y.) 307; Cleary v. Electric Light Co., 47 N. Y. St. Rep. 172, 139 N. Y. 643; Mullen v. Old Colony R. R. Co., 127 Mass. 86; Bliss v. Railroad Co., 160 Mass. 447; Union Pacific R. R. Co. v. Harris, 158 U. S. 326.

But this practice by no means allows a party to recover in a legal action on a verbal contract relative to the same subject-matter contained in a written one signed by him, on proving he was misled about the contents of the latter. The contention of the appellant is that his case falls within the purview of the rule followed in the foregoing authorities, and that he had the right to introduce evidence for the consideration of the jury to show what the actual agreement made between him and the company's agents was; that the document he signed does not express that agreement and that he was induced to sign it by its contents being erroneously stated to him when he was unable to take care of his interests. Neither in the above cases nor in any other that has been cited, was such a practice permitted or approved; for we carefully examined all to which our attention was called in the appellant's brief, and they fail to support his position. As has been said in numberless decisions, whatever discussions or negotiations took place between the parties in the verbal treaty looking to an agreement, are conclusively presumed to have been fully expressed in the written instrument as they were assented to by both parties, when either asserts the contract and counts on a violation of it for a cause of action, as Koffman does. Crim v. Crim, 162 Mo. 544.

The foundation of this action is the defendant's alleged failure to perform a duty, to-wit: furnish plaintiff skillful surgery—a duty that never existed until it was created by a contract in which the defendant assumed it. No obligation bound the company to fur-

nish plaintiff surgical treatment, skillful or otherwise,. independent of an agreement to that effect.  This proposition is conceded, as is the fact that the written memorandum signed by Koffman did not impose on the defendant any obligation except to pay his doctor bill.  So, to make out a case, plaintiff sought to prove a verbal agreement by the company to furnish the services of a surgeon who would properly treat him, which would have been proving a stipulation or term not expressed in the instrument and different from any that is expressed in it.  The evidence offered was obnoxious to the rule against parol testimony to vary writings.

But if is claimed the excluded evidence tended to show fraud in the execution of the instrument, as indeed it did, and that therefore it was competent.

The plea of *non est factum* at common law, by which the extent of the legal remedy against written instruments obtained by fraud is to be measured, let in oral testimony to avoid the instrument by showing it was not in any true sense executed by one of the parties, but did not permit a defrauded party to set up a verbal contract as the one actually made, in lieu of the one contained in the avoided writing, and recover for a breach of it.  If it is asked why a person should be allowed to defend against a written agreement fraudulently procured, or to overcome it when interposed as an accord and satisfaction to a previous cause of action unconnected with it or the negotiations leading to its execution, and not allowed to ignore a complete memorandum when he sues on the agreement which it ought to have but did not express, the answer must be that it is, and for centuries has been the policy of the law to exclude parol evidence to establish agreements in order to make them the basis of a legal action when the parties have signed a writing for the purpose of setting out their agreement.  It may be as logical to

admit parol proof in one case as in the other, but this positive rule of law intervenes in one case and not in the other, and legal rules and precedents are not always uncompromisingly logical; for they are drawn from diverse sources and often devised to meet immediate needs in the dispensation of justice rather than to round out a system.

When a suit is to be brought on an agreement as made, but not written, the writing must be rectified by a proceeding in equity, and the reason of this procedure is that equity long since began to grant relief in such cases because the law granted none. The rule of equity jurisprudence on this subject is well stated by an able commentator:

"Parol evidence may, in proper modes and within proper limits, be admitted to vary written instruments, upon the ground of mistake, fraud, surprise and accident. This exception rests upon the highest motives of policy and expediency; for otherwise, an injured party would generally be without remedy."

Further discussing the same topic, the author says:

"Reformation is appropriate, when an agreement has been made, or a transaction has been entered into or determined upon, as intended by all the parties interested, but in reducing such agreement or transaction to writing, either through a mistake common to both parties or through the mistake of the plaintiff accompanied by the fraudulent knowledge and procurement of the defendant, the written instrument fails to express the real agreement or transaction. In such a case the instrument may be corrected so that it shall truly represent the agreement or transaction actually made or determined upon, according to the real purpose and intention of the parties." 2 Pomeroy's Equity Jurisprudence, sec. 870.

See also Kerr on Fraud and Mistake (Am. Ed.), p. 409, et seq; Browne on Parol Evidence, sec. 43, and

cases cited; Kilmer v. Smith, 77 N. Y. 266; Dameron v. Jamison, 4 Mo. App. (St. L.) 299.

Appellant relies on the decisions above cited from our Supreme Court, holding that where a compromise settlement is pleaded in bar of an action for damages against a tortfeasor, the plaintiff may show the acquittance was fraudulently obtained. But this action is not founded on the injury alleged to have been inflicted by respondent's negligence in handling its car, and therefore said decisions are not in point, nor is the recently-enacted statute on the subject. R. S. 1899, sec. 654.

Appellant could only recover on the alleged verbal agreement in regard to the treatment of his injury, by reforming or setting aside the written instrument, as the learned circuit judge ruled. The jurisdiction to do so belongs exclusively to courts of equity and can not be remitted to the determination of a jury in an action at law.

Another point for reversal is made, on the ground that as there was evidence to show the railway company actually furnished a physician to Koffman who treated him carelessly, he was entitled to go to the jury on the implied undertaking of the company to furnish proper and skillful treatment. But that point is certainly untenable on this appeal; for the appellant took a nonsuit when the court excluded evidence to contradict the written instrument. If there was other evidence which should have been submitted by the court, then the nonsuit was that far voluntary; in truth, we have been skeptical about whether the nonsuit ought not to be treated as voluntary and neither point considered. But, unquestionably, appellant had no right to abandon his case at the stage he did, if, as is now urged, he had introduced evidence that made out a case for damages on an implied contract for careful

surgery to be raised from the circumstance that the respondent furnished him the surgeon.

From the foregoing considerations it results that the rulings of the court below were correct and its judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.