CHRISTINA LAUFFER, Executrix of FRANK LAUFFER, JOSEPHINE SUN-
NER, FRANCES MORRISON and CHRISTINA LAUFFER v. P. A. SMITH
and CORA SMITH, Husband and Wife, Appellants.—85 S. W. (2d)
94.

Division One, July 9, 1935.

*T. P. Hukriede* and *James Booth* for appellants.

*Adolph G. Schumacher, D. W. Breid, Jesse H. Schaper* and *Randolph H. Schaper* for respondents.

24

HAYS, J.—This is a suit brought by the life tenant and the remaindermen who took under the last will of Frank Lauffer, deceased, to reform a deed and to quiet title to a plot of ground conveyed by Frank Lauffer and his wife on February 25, 1927, to the defendants, husband and wife, purporting to convey to them all of blocks 1 and 2 of George Schmich's subdivision in the city of Union, Franklin County, except United States Highway No. 50 (60 feet in width) which runs east and west diagonally across said property.

Prior to the execution of the deed the grantors had given the defendant an option contract in writing, executed by themselves and the defendants, for the purchase by the latter of that part of said blocks lying south of the highway, the contract containing a description of the property by metes and bounds. The agreed consideration

was $2250 of which $100 was paid as earnest money and the remainder was to be paid on delivery of the deed.

The petition, framed in two counts, charged that the part of said blocks lying north of the highway was included in the deed under mistake on the part of the grantors and fraud was practiced upon them by the grantees by taking advantage of the grantors and by inducing them to believe that the property described in the deed was the same as that described in the prior contract of the parties, and no more. By the first count the petition prayed that the deed be reformed by voiding and striking out that part of it purporting to convey that part of said property lying north of the highway. The second count was designed, by the adoption of the constitutive allegations of the first count and by the prayer of the second, to ascertain, determine and quiet title of plaintiffs to said ground north of the highway. The petition stated at great length the condition of Frank Lauffer and the surrounding facts upon which the allegations of mistake and fraud were bottomed. Substantially as pleaded they were as follows:

At the time of the execution of the deed Mr. Lauffer was old (84 years of age), infirm, almost blind, and could not read or write, except his own name, he was also partially paralyzed and had nervous spells. Both he and his wife were suffering from loss of the sense of hearing, and were incapable of understanding the description in the instruments, particularly the description by metes and bounds. Undue advantage was taken of them by defendants in the execution of the deed, in that it was drawn by the defendants through their agent, and Lauffer and his wife were not advised nor were they aware that the description therein included the property not described in the prior contract, but were of the belief that the deed conveyed the same property that was described in the contract, and none other. This mistaken belief was induced by the fraud of the defendants in concealing from the grantors their own knowledge that the deed did not correspond with the prior contract but did include also that part of said blocks north of the highway.

The answer admitted the execution of both the contract and the deed and denied generally all other allegations of the petition. It then set up laches and estoppel *in pais*. It stated that between the execution of the written contract of date February 17, 1927, and the execution of the deed, February 25, 1927, defendant, P. A. Smith orally contracted with Lauffer and his wife that that part of said blocks lying north of Highway 50, as well as the part lying south of the highway, was to be included in the deed and without obligation for payment of any consideration additional to that stated in the

written contract; that after the execution of the deed the defendants proceeded to make valuable improvements north of the highway, viz., a concrete retaining wall, dirt fills, a filling station and concrete work; paid the subsequent taxes on the property, and occupied, used and claimed the land in suit as their own—all with the knowledge of the plaintiffs—without assertion by plaintiffs of claim of title.

By reply the plaintiffs admitted the making of said improvements and averred that they at the time of such improvements gained their first knowledge that defendants made claim to the land north of the highway, and that it was thereafter plaintiffs learned that they had been defrauded by defendants in the manner set out in the petition. Plaintiffs denied all other allegations of the answer.

We shall not undertake to state the evidence in the printed abstract of nearly 300 pages but will confine ourselves to giving the substance of that bearing on the essentials of the case. The evidence for plaintiffs tended to show that the contract price for the ground lying south was, as stated above, $2250. No additional sum was paid or agreed to be paid as a consideration for the plot lying north of the highway. Defendant P. A. Smith had the contract prepared. This was after he had applied to buy the property south of the highway, which property the Lauffers had shown him before an agreement was reached upon the price of it. A few days later Smith returned with the contract prepared in duplicate, the duplicates were executed, Smith retaining one and the Lauffers the other, and Smith paid one hundred dollars earnest money, the remainder to be paid on execution and delivery of the deed. Neither in the negotiation nor in the execution of the contract was any other land shown, discussed or mentioned. Smith, who was county assessor, read the contract aloud to Mr. Lauffer before its execution. Eight days later, February 25, 1927, Smith and one Hansen, public administrator and an abstracter, went to the Lauffer home in Franklin County, taking with them a deed for execution. Mr. Lauffer being sick in bed, Mrs. Lauffer dressed him, as she usually did, and brought him into the room where the visitors were, whereupon she suggested that she would ''go and get the contract and they said it was unnecessary, that it was all in the deed.'' The deed was then read aloud by Hansen. Smith delivered his check for $2150 and the deed was delivered to him. Mrs. Lauffer heard the reading indistinctly and without ability to understand it, so she said.

Defendant Smith's version was this in substance: Mr. and Mrs. Lauffer told him they understood ''I was figuring on buying a piece of property and I told them I was, and I asked them—they said 'I want to sell you this piece down there (south of the highway).' They offered it for $2500 but I said I will give you $2250 and they said

'All right,' '' Next he had a lawyer draw the contract. He further said: ''In a day or two—I next realized that I had to draw the deed—I went back to the Lauffers and asked them for the north side corner on the creek part there on the north side of the highway and he said that I was to get all of the two acres.'' Smith further testified that he was to pay nothing in addition for the north half of the lot; that nothing was said in that regard; and that actually he paid nothing in addition to the original contract price of the south half. Neither, he said, in the execution of the deed nor afterwards did he tell the Lauffers that the property north of the highway was included in the deed, nor did they mention it to him. Smith made no mention to Hansen, the scrivener, of the existence of the contract or what it covered. He said he merely showed Hansen on the atlas the property to describe in the deed, and the deed was prepared in accordance with such direction. Both he and Hansen testified that the deed was read aloud to the Lauffers and that Hansen followed the description on the atlas as he read, but it appears that nothing was said as to where the land lay with respect to the highway. They both said it was referred to as zwei acres. When it came to signing the deed Mr. Lauffer called upon his wife to procure his glasses for him. He then signed—by mark, it is to be inferred, because the record shows he signed the contract in that way. Smith and Hansen controverted what Mrs. Lauffer said in respect of what took place with regard to her mention of the contract and Smith denied the matters testified to by Mrs. Lauffer in relation to the question of laches and estoppel, next to be mentioned.

Mrs. Lauffer denied *in toto* all that Smith said with regard to the oral contract. She said there was no such occurrence and that the first mention of the property lying north of the highway occurred a couple of weeks after the making of the deed when Smith came down and told Mr. Lauffer, ''he would like to have on the north side. We went down to the ground and he said he wanted that piece of ground the creek runs there, he was going to riprap the creek and have it concreted slanting 'for to wash cars. And Mr. Lauffer said he did not want to sell that, that it is not for sale. Mr. Lauffer said we can let you make use of it provided if a sale on this side of the line is to be there, then you will have to give it up and Mr. Smith said, 'All right.' '' Several weeks afterward Smith began to riprap the creek but did not construct the car wash then or afterward. She made objections to the workmen in the subsequent construction that was done north of the highway. Neither she nor Mr. Lauffer discovered the mistake in the description in the deed until in the fall of 1929 whereupon they consulted legal counsel, one after another, and

instituted a suit when counsel saw fit to institute it, June, 1931.

Before the suit was filed Mr. Lauffer passed away. Upon the evidence which we have sketched the court below entered a decree for the plaintiffs on both counts of the petition. The defendants appealed.

The equitable principles which govern the facts before us are few. With respect to mistake and fraud—if operating together to the same end—as ground for reformation of a contract or deed of conveyance in the execution of. which the terms agreed on by the parties are suppressed so that the instrument does not accurately state the contract actually made, it is well-established general doctrine that equity will afford the remedy of reformation of the instrument so as to express the intention of the parties. [23 R. C. L., secs. 14 and .22, pp. 320 and 331; 53 C. J., p. 949 et seq.; Koffman v. S. W. Mo. Elec. Ry. Co.. 95 Mo. App. 459, 68 S. W. 212; McGhee v. Bell, 170 Mo. 121, 70 S. W. 943.] It is not necessary that the mental weakness of the party thus imposed upon be, from sickness or disease, extreme, or from natal decree moronic. In a standard text it is said:

"Whatever be the cause of the mental weakness—whether it arises from permanent injury to the mind, or temporary illness, or excessive old age—it will be enough to make the court scrutinize the contract with a jealous eye; and any unfairness or overreaching will be promptly redressed. As was said by the Supreme Court of the United States in a recent case, 'wherever there is great weakness of mind in a person executing a conveyance of land arising from age, sickness or any other cause, though not amounting to an absolute disqualification,. and the consideration given for the property is grossly inadequate, a court of equity will, upon proper and seasonable application of the injured party or his representatives or heirs, interfere and set the conveyance aside.'" [Bispham's Principles of Equity (4 Ed.), sec. 230, pp. 290-291.]

The greater part of the record is taken up with testimony relative to the condition of Mr. and Mrs. Lauffer, particularly Mr. Lauffer's condition, and their likelihood of mistake and susceptibility to fraud practiced upon them. We have read and considered it all and we approve the finding made thereon by the circuit court as fully supporting the allegations of the petition in that respect. We agree also with the trial court's finding that the grantors, in the execution of the deed, acted under mistake, as alleged.

The claimed incidents of engrafting an oral contract upon the written contract were haltingly and unconvincingly told by Mr. Smith. He had contracted for the property south of the highway with an alacrity that bespoke his previous consideration of that very property. Presumably the price he bargained to pay for it was its' reasonable

value and the property was deemed suitable to his purposes. In his change of mind and in concluding that the property north of the highway was preferable, if he did, it is difficult for us to conceive of how he could have imagined he might obtain the latter for nothing merely by the asking. There was evidence in the case that it was reasonably worth $2000 to $2500 and was approximately the same in quantity or extent as the other, though cut by the creek. It is apparent that the north plot was superior in point of its proximity to traffic passing to and from Union, and equally adjacent with the south plot to through traffic on the state highway, and hence superior in location. Yet, according to Mr. Smith's testimony, his request was at once granted with demur, if not with eagerness. This evidence is inherently incredible. More than that, it is contradicted and the contradiction is supported by other dealings of the parties which took place shortly after the deed transaction which were compatible with the previous understanding and intent of the Lauffers in the prior transactions and raise a significant inference pointing to inequitable conduct on the part of Mr. Smith.

■ We now inquire into the subject of laches and estoppel raised in bar by the defendants and predicated upon alleged inexcusable delay in the assertion of the rights now advanced by the plaintiffs after their having suffered the defendants to make claim and exercise dominion of the property in suit and expend moneys in permanent betterments thereon. Ordinarily equity follows the law, i. e., the law of limitations, in dealing with laches, though not necessarily. Exceptions to the general rule arise in situations which present peculiar considerations invoking principles of equity. Since the occupancy by the defendants was confined to only a small part of the whole of the land in suit—a limited occupancy begun under license—and without asserted claim to the remainder thereof; and since plaintiffs' delay was occasioned in part by the lack, through incapacity, of assertive action by Frank Lauffer in his lifetime, his delay is palliated, and the subsequent delay of his devisees is largely excusable by reason of their lack of knowledge of the fault in the description in the deed. It seems that the devisees acted with a fair degree of promptness thereafter in seeking legal counsel. No good reason appears why they should be charged with delay due to the vicissitudes incident to the employment of counsel and their subsequent delay, if any, in bringing the suit.

Yet under all the facts, as the chancellor evidently thought, the defendants should not be made to fare the worse by the delay. The evidence shows their outlay to have been the following: Property taxes for the four years preceding the trial $230.77; dirt fills $270; concrete wall $210.75; tile and stucco filling station completed June 1,

1928, $1100; being in the aggregate $1821.52. Defendants received as rent for the filling station $50 per month from its completion to the trial, some four years, amounting to $2400. The outlays with interest for that period amounted in round numbers to $2350, which sum practically balances rents received. The decree rendered by the circuit court reforms the deed and restores the parties to the *status quo* as respects the property in suit. Though we try the case anew and pass upon the weight of the evidence, yet there being sharp conflict in the oral testimony, involving the credibility of witnesses, it is our duty to defer to the chancellor's findings unless they be against the weight of the evidence. [Fessler v. Fessler, 332 Mo. 655, 670, 60 S. W. (2d) 17, and cases cited.] We do not so regard his findings and, therefore, we affirm the judgment and decree. All concur.