## OWEN O'NEIL v. THE LAKE SUPERIOR IRON COMPANY.

*Negligence—Master and servant—Benefit club—Release and discharge—Mistake—Authority of agent.*

An iron mining company organized a "benefit club," the plan of which was printed in *large* posters, put up in *conspicuous* places on its premises, which, after reciting the *hazardous* nature of its business and the dependence of employés and their families, as a general rule, upon their labor, and the consequent importance of providing against the loss of the same by accident, *affirmed* that employers could not be *legally* responsible for the support of those thus dependent, and that "*all* employés *assume* their own risk of accidents or illness, from *whatever* cause." It then formulated a plan whereby a benefit fund should be accumulated by the contribution of an equal sum each month by the miner and company, to be used in a specified manner under direction of an examining committee chosen from among the employés by the agent of the mine, and, in case of *death* from accident, a certain sum was to be paid to the administrator of the deceased, on execution by him of a release of *all* claims for damages against the company by reason of such death, no matter how occasioned, and regardless of the *negligence* of the company, and a certain sum to the *injured* employé, on account of accident or permanent injury, upon his signing a similar release. The plan for the club was never adopted by a meeting of the miners, but was merely a manifesto addressed to the employés of the company.

Plaintiff was injured while in the employ of the company, and brought suit for damages, and the court, on production by the company of a release signed by plaintiff in the form above set

forth, directed a verdict for the company, holding the release a *bar* to the action, regardless of whether plaintiff had made out a case or not. The plaintiff could not read, and had no knowledge of the terms or conditions of the printed notice, but understood that there was a benefit club, to which the employés and the company contributed, and, in case of injury, the injured person was to receive aid to a given sum per month. He was not informed of the contents of the release when he signed it.

On the foregoing facts the Court held as follows:

1. That the statement in the manifesto that "all employés assume their *own* risk of accidents or illness, from *whatever* cause," was an *incorrect* affirmative statement of what the law is, made to a class of persons ignorant of *what* it is, and who might justly rely upon the truth of the representation made, and that, while all are presumed to know the law, yet in many cases this is a weak presumption, and disappears entirely in the face of a *positive* representation of what the law is, upon the *truth* and *good faith* of which *reliance* is placed.

2. That an injured person contributing to said benefit fund, and entitled to share therein, who can only obtain such aid by signing the *aforesaid* release, is not bound thereby, unless it appears that he was *fully* informed, or had knowledge, of the *fact* of the *negligence* of the company, and its *liability* to him *therefor*, and fully understood that by *such* signing he was releasing the company from *such* liability.

   *Held,* further, that the question of *such* knowledge on his part was a question for the jury, and that it is not the *intention,* but the *effect* upon the plaintiff of what was said and done at time of signing, that is material; for if the *effect* was to lead him to believe that he was signing a mere *receipt* for the money, he was deceived as to the *real* character of the paper he signed.

3. Where in such a case some of the monthly payments were received by plaintiff's wife, who could read, and yet signed the release, her authority to do so not being shown,—

   *Held,* of no importance; that he sent her for the money, and this authorized her to receive and receipt for it, but gave her no authority to sign such release.

4. Where in such a case the plaintiff brought suit without tendering to the company the money received,—

   *Held,* unimportant, unless the plaintiff had full knowledge of the conditions set forth in said release; that the fund was held by the company as *trust* money, and did not belong to it in any other right than as *trustee,* and the payments were made in that capacity.

Error to Marquette. (Grant, J.) Argued November 10, 1886. Decided November 17, 1886.

Case. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*F. O. Clark,* for appellant:

The signing of the release was procured through a misstatement that it was a receipt, when it was more, and amounted to a fraud upon plaintiff, who waived no rights by signing it: *O'Donnell v. Segar,* 25 Mich. 367; *Mich. Cent. R. R. Co. v. Dunham,* 30. Id. 128; *Match v. Hunt,* 38 Id. 1, 6, 7; *Berry v. Whitney,* 40 Id. 65; *Lewis v. Gamage,* 1 Pick. 347, 351.

Procuring a signature to a contract under a misstatement of its contents is a fraud, and violates the contract: *Gibbs v. Linabury,* 22 Mich. 479; *Anderson v. Walter,* 34 Id. 113; *Hobbs v. Salis,* 37 Id. 357.

*Hayden & Young,* for defendant:

Accord and satisfaction need not be pleaded in trespass on the case: 1 Tidd, Pr. 652; 1 Green, Pr. 221; *Hurst v. Cook,* 19 Wend. 470.

A receipt after injury in full satisfaction is conclusive unless impeached for fraud or *mutual* mistake: *Ill. Central R. R. Co. v. Welch,* 52 Ill. 183; *Prichard v. Sharp,* 51 Mich. 432.

It is not an ordinary receipt, but an *agreement,* and cannot be contradicted by *parol* evidence showing the understanding was different from that expressed in the paper: *Coon v. Knap,* 8 N. Y. 402.

The defendant, who paid its money and obtained plaintiff's signature, cannot be prejudiced by his neglect to inform himself of the contents of the paper: *Paine v. Jones,* 75 N. Y. 593; *Kennerty v. Etiwan Phosphate Co.,* 53 Am. Rep. 669.

At most, the agreements are only voidable, and plaintiff must rescind and repay the $200 received in order to escape their force: *Carpenter v. Rodgers,* 61 Mich. 384.

CHAMPLIN, J. This action was brought by the plaintiff against the defendant to recover damages for an injury received by him while working in the defendant's mine, and

which he claims was caused through the negligence of the defendant.

The defense was the general issue, under which the defendant introduced in evidence a written release and discharge of defendant, signed by the plaintiff, releasing and discharging defendant from all liability or claims for damages which he might have against it on account of disability received by plaintiff, while in its employ, on the ninth day of February, 1885, which was the date of the injury complained of, and all claims for damages, whether from the negligence of the defendant, its officers, agents, or servants, or otherwise.

The court instructed the jury that this release was a bar to plaintiff's right to recover, whether he had made out a case against defendant or not.

It appeared in evidence that the Lake Superior Iron Company, six or seven years ago, organized what was called a "club," to which the miners pay thirty cents a month, and the company pays an equal amount, making sixty cents a man. The scheme was printed in large posters, and posted up in conspicuous places upon the premises where men were employed, and was as follows:

" *To the Employés of the Lake Superior Iron Company—Lake Superior Mine:*  Employment in and about all iron mines is known to be hazardous, as is shown by accidents which frequently occur, for which no one can be blamed. Those employed are ordinarily dependent upon their labor for the support of themselves and their families, and consequently have but little, if anything, to leave for the support of those dependent upon them; so that in many cases great suffering and distress is occasioned through death by accident, or through loss of time on account of injury not resulting fatally. It is therefore very important that provision should be made against such contingencies as may occur to any one at any time.

" Employers cannot be considered legally responsible for the aid and support of those dependent upon any of the employés. All employés assume their own risk of accidents or illness, from whatever cause. The company, however, desires, in cases of accident, to aid in relieving the sufferings

of those dependent upon its employés, by providing a benefit fund, to which every man in or about the mine is required to pay thirty cents every month, the company contributing an amount equal to the aggregate of such assessment, to be paid out as hereinafter provided.

" The benefit fund collected in accordance with above provisions shall be held and paid by the company, and, when the balance in hand shall reach ten thousand, such collections shall cease until their resumption shall be deemed necessary by the officers of the company.

" The company will determine, on the first of November in each year, what amounts can be paid to the different parties during the ensuing year. The amounts and persons fixed upon for the fiscal year, commencing November-1, 1880, are as follows :

"1. To the representatives of each employé who may die from the effects of injuries received while in the employ of the company, $400.

"2. To such employés as may be prevented from working by accident, not less than $15, nor more than $25, per month. Said payments shall commence on the fifth day after the person has been away from work, in case of disability from accident. Pay shall continue only until such measure of health as is possible, under the care of the resident physician, has been established; and in no case for a longer period than the term of six months from the time when the accident occurred.

"3. To any employé who becomes maimed, or permanently injured, a sum not exceeding $200, according to the nature of such injury.

" An examining committee of three persons shall be chosen from among the employés of the company, by the agent of the mine, for each quarter, on the first day of November, February, May, and August of each year, whose duty it shall be to visit all parties requiring assistance, and to decide what sum, within above limits, shall be paid in case of injury; but no one shall be entitled to the benefit of these provisions unless the committee shall decide that he was in the employ of the company at the time of his accident, injury, or death, and that the accident, injury, or death was not during nor occasioned by drunkenness, breach of the peace, or violation of, or attempt to violate, the law.[1]

" In case of payment on account of death resulting from

---

[1]As to finality of decision of "sick committee," see *Van Poucke v. Netherland St. Vincent DePaul Soc.*, 63 Mich. 378.

accident, the sum is to be paid to the legally constituted administrator of the deceased, upon his signing an agreement of which the following is a copy :

" *Know all men by these presents*, that in consideration of the sum of ―――― dollars, to me, ――――, administrator of the estate of ――――, deceased, in hand paid by the Lake Superior Iron Company, the receipt whereof is hereby acknowledged, I have released, and by these presents do release, said Lake Superior Iron Company from any and all claims for damages which I, as such administrator, may have against said Lake Superior Iron Company, on account of the death of ――――, occasioned by an injury received by him while in the employ of said company. I do hereby release said Lake Superior Iron Company from all claims for such damages, no matter from what cause the accident that produced the injury and death of said ―――― occurred, whether claimed to be from the negligence of the Lake Superior Iron Company, its officers, servants, or agents, or otherwise.

" *In witness whereof*, I, ――――, as such administrator, have hereunto set my hand and seal this ―――― day of ――――, A. D. 188―.

" ――――――――

" ――――――――,

" Administrator of the Estate of ――――――――.

" In case of payment on account of accident, or on account of permanent injury, the sum is to be paid to the person so injured upon his signing an agreement of which the following is a copy :

" *Know all men by these presents*, that, in consideration of the sum of ―――― dollars, to me, ――――, in hand paid by the Lake Superior Iron Company, the *receipt whereof is* hereby acknowledged, and of the recognition of my rights of such further sums as may be awarded me out of the benefit fund, I have released, and by these presents do release, said Lake Superior Iron Company from any and all claims for damages which I may have against said Lake Superior Iron Company, on account of a disabling injury received by me on the ―――― day of ――――, 188―, while in the employ of said company. I do hereby release said Lake Superior Iron Company from all claims for such damages, no matter from what cause the accident that produced the injury occurred, whether claimed to be from the negligence of the said Lake Superior Iron Company, its officers, servants, agents, or otherwise.

" In witness whereof, I, ――――, have hereunto set my hand and seal, this ―――― day of ――――, A. D. 188―.

" ――――――――――――――

*"Ishpeming, Mich., November 1, 188—.*

" Due notice will be given should any change in the above arrangement be deemed necessary.

" C. H. HALL,
" Agent."

The plan for a mutual benefit club above given was never adopted by a meeting of the miners employed by defendant. It was merely a manifesto addressed to its employés.

The object and purpose, as expressed in the address, was meritorious and highly commendable. The language, as above stated, is as follows:

" The company, however, desires, in cases of accident, to aid in relieving the sufferings of those dependent upon its employés, by providing a benefit fund, to which every man in or about the mine is required to pay thirty cents every month, the company contributing an amount equal to the aggregate of such assessment, to be paid out as hereinafter provided."

It will be observed that there is nothing in this statement of the object and purpose of raising this benefit fund which intimates in the remotest degree that one of the purposes of such benefit fund is to release and discharge the company from all liability on account of the negligence of its officers and agents, causing injury to their employés. The address, moreover, provides explicitly how the fund shall be paid out, viz.:

" The benefit fund collected in accordance with above provisions shall be held and paid by the company. 　*　　*　　* The company will determine, on the first of November in each year, what amounts can be paid to the different parties during the ensuing year."

Then follows the amounts and persons to whom the money shall be paid in case of injury. Thus far these provisions are all consistent with the leading idea of a benefit fund arising from the contributions of the employer and employed, to aid in relieving employés, and those dependent upon them, in case of injury by accident while working in the mines. The manifesto has proceeded thus far upon the assumption

that mining is a hazardous business, by reason of the acci-
dents which frequently occur in the prosecution of the work,
and that "all employés assume their own risk of accidents
or illness, from whatever cause." This assertion is not
strictly accurate. If it were, there would have been no neces-
sity for the agreement which the company requires a beneficiary
to sign before receiving pay from the benefit fund. It is an
incorrect affirmative statement of what the law is, made to a
class of persons ignorant of what it is, and who might justly
rely upon the truth of the representation made. It is true
that all are presumed to know the law, but in many cases
this is a weak presumption, and disappears entirely in the
face of a positive representation of what the law is, and
upon the truth and good faith of which reliance is placed.

I have no hesitation in saying that an injured person who
has contributed to the benefit fund, and entitled to share its
proceeds, who can only obtain such aid by signing the agree-
ment to release and discharge the company from any and all
claim for damages on account of the disabling injury, when
such injury was caused by the negligence of the company,
its officers or agents, for which such company, under the
circumstances and rules of law, would be liable, is not bound
thereby, unless it appears that the injured person was fully
informed, or had knowledge, of the fact of the company's
negligence, and of its liability to him therefor, and fully
understood that by signing such agreement he was thereby
releasing and discharging the company from all liability to
him arising from such negligence. To hold otherwise would
be to sanction the deception contained in the language above
quoted, wherein it is represented that "all employés assume
their own risk of accidents or illness, from whatever cause."

This is not true when the accident is caused by the negli-
gence of the company, and the injured party is free from
negligence on his part.

The plaintiff in this case was not shown to have had any

knowledge of the printed address to the employés, which is given *in extenso* above, and which had been posted on the premises. On the contrary, it was shown that he could not read, and had no knowledge of the terms or conditions of the printed matter. He understood there was a benefit club, to which the employés and the company contributed, and, in case of injury, the injured person was entitled to aid therefrom to the amount of $25 a month. He entered into no agreement when he engaged in defendant's employment that he should assume all risk of accident, from whatever cause; nor that if he should be injured, and should receive aid from the benefit fund, he should, before doing so, sign an agreement to release and discharge the company from all liability arising from the negligence of the company, its officers, etc.

Neither was he informed of the contents or substance of such agreement as he did sign, on receiving his monthly aid. He did not read it,—indeed he could not,—and it was not read to him, or he informed of its contents. When he was paid the money, the paper was placed before him, and he was requested to "sign this receipt."

It is proper to state in this connection that any intention to practice deception upon the plaintiff when he signed this so-called receipt is disclaimed by counsel for both parties upon the argument before us.

It is not the intention, but the effect upon the plaintiff of what was said and done at the time the paper was signed, that is material here; for if the effect was to lead him to believe that he was signing a mere receipt, and call his attention away from the fact that he was signing so important a paper as an agreement for a release of defendant from liability, the result would be the same,—he was deceived as to the true character of the paper he was signing. He testifies that he did not know that he was signing, and did not intend to sign, an agreement to release defendant from liability arising from its negligence.

Whether he understood the purport of the instrument he signed, or whether he was misled into signing it, supposing it to be a mere receipt for the money, were questions which under all the circumstances should have been submitted to the jury.

The fact that some of the monthly payments were received by plaintiff's wife, and that she could read, and yet signed the agreement, is of no importance. He sent her for the money. This would authorize her to receive it, and to give a receipt therefor, but no authority is shown for her to sign an agreement to release the company from liability to plaintiff for the injury he had sustained through its negligence.

It is also insisted that this action will not lie because the plaintiff did not tender back the money he had received from the benefit fund before bringing suit. This fund, by the terms of the address, was to be held by the company. Nevertheless, it was trust money, and did not belong to the defendant in any other capacity than as trustee. The moneys paid out were paid in the same capacity. This suit is not brought against the defendant as trustee of the fund, nor to reach the fund in its hands; and if the jury should find that the agreement set up in bar of the action, founded on defendant's negligence, was not binding on plaintiff by reason of fraud or mistake, we can see no obligation resting upon plaintiff to repay the benefit fund before bringing action against defendant for the injury inflicted by its negligence.

We were strenuously urged by defendant's counsel to look into the whole record, with a view of ascertaining whether the plaintiff had made a case of negligence against the defendant sufficient to warrant a recovery. He requested the court below to so charge the jury; but that court did not do so, but charged, as above stated, that the agreement of release signed by plaintiff was an absolute bar to a recovery, whether the plaintiff had made out a case or not. There was some testimony tending to prove defendant's negligence; whether it

was sufficient or insufficient we do not undertake to say, because the point was not ruled upon by the court below. We prefer to confine our decision to the errors assigned, which we have discussed.

The judgment must be reversed, and a new trial granted.

The other Justices concurred.