CRAWLEY v. STUDEBAKER CORPORATION.

1. MASTER AND SERVANT—CANCELLATION OF RELEASE—FRAUD.
   Plaintiff accepted $42.50 from his employer and gave a receipt in full for personal injuries and damages sustained, the amount of the payment representing the time which plaintiff had lost. He claimed that he did not read the release or know what it contained, that he signed it in reliance upon the advice of the physician employed by defendant in such cases, who told him that his injuries were not permanent. The trial court directed a verdict for defendant for the reason that the amount received had not been tendered back. Held, that no fraud was practiced in obtaining the release, which was plainly stated in unequivocal terms, and that the receipt and release was conclusive against plaintiff's right of recovery.

2. SAME—NEGLIGENCE.
   Held, also, as matter of law, that defendant's negligence was not made out and that the rules of assumption of risk and contributory negligence barred his recovery.

3. APPEAL AND ERROR—REVIEW—DIRECTED VERDICT.
   On appeal from a directed verdict based on one ground, the parties did not, by stipulating that all the questions included in the motion of defendant might be considered in the Supreme Court, impose a duty on the court to examine all the points presented in the motion to direct

a verdict; if the reason given by the trial court was insufficient, but the judge reached a correct conclusion for other reasons, the court would affirm the judgment.

Error to Wayne; Hosmer, J. Submitted October 8, 1914. (Docket No. 22.)    Decided December 19, 1914.

Case by Harry E. Crawley against the Studebaker Corporation for personal injuries. Judgment for defendant on a directed verdict; plaintiff brings error. Affirmed.

*Frederic T. Harward,* for appellant.

*George F. & Peter J. Monaghan,* for appellee.

OSTRANDER, J. The testimony given by plaintiff was to the effect that before beginning suit he knew, and told his attorney, that he had signed a receipt which he had not read; that it might have been a receipt in full, and, if it was, it was not binding, because in that case a fraud had been perpetrated, the physician having misrepresented his (plaintiff's) condition; that he did not seek to learn what was the form of the receipt, and did not tender to defendant the money which he received when the receipt was given. The declaration was read to him, and he knew what it contained upon the subject. The declaration contains the following:

"That because of his injuries aforesaid he was directed by one Bockus, manager of said plant No. 4 of said defendant, to see and consult Dr. Walter G. Paterson, of the city of Detroit, who was one of the physicians and surgeons of the said defendant, who treated said plaintiff on several occasions, and who represented to said plaintiff that he was not injured internally or permanently, which he relied upon and hoped and believed at the time; that some time after said treatment by said Paterson he put in his time which he had lost by reason of said injuries to said defendant at, to wit, seventy ($70.00) dollars, for 14 days' work lost time, at five ($5.00) dollars a day, which was the

amount he received from said defendant, and said defendant offered to pay him forty-two 50/100 ($42.50) dollars for his said lost time, which said plaintiff accepted, and received said money on or about the 23d day of December, 1911, and he signed a receipt for the same, but did not examine it closely; that if said receipt was made in full for his said injuries and action aforesaid, he hereby avers and charges that it was signed by mistake, and was also a fraud upon him because of the statements and representations of the said Dr. Walter G. Paterson, said physician and surgeon of said defendant, concerning his physical conditions, and should have no binding effect upon him, and is null and void."

A verdict was directed for defendant when plaintiff's proofs were concluded, upon the ground that plaintiff was bound, before bringing his suit, to tender to defendant a sum of money paid to him, and for which he receipted in the following form:

"RECEIPT AND RELEASE.
                                        "Dec. 19, 1911.
"Received from the Studebaker Corporation the sum of $42.50, which I, being of full age, acknowledge to be in full accord and satisfaction of the disputed claim growing out of the bodily injury sustained by me on or about September 27, 1911, for which bodily injury I claim the said Studebaker Corporation to be legally liable, which liability is expressly denied; and in consideration of the said sum to be paid, I hereby remise, release, and forever discharge the said Studebaker Corporation, its heirs, administrators, and assigns, from any and all actions, causes of action, claims, and demands for or upon or by reason of any damage, loss, injury, or suffering which before has been or which thereafter may be sustained by me in consequence of such accident and injury.

"Witness my hand and seal the day and date first above written.
                                        "HARRY E. CRAWLEY.
"Witnessed by Robert E. O'Brien.
"ROBERT E. O'BRIEN."

Error is specifically assigned upon this ruling.

When the bill of exceptions was settled, the trial judge added to his certificate the following:

"While I have not considered favorably or unfavorably any of the grounds raised by counsel for defendant in its motion for direction of a verdict, other than the matter of tender, by stipulation of counsel for both sides, in order that all matters raised in the motion of defendant may be considered in the event of appeal, I direct a verdict upon each and all of the grounds raised by defendant in its motion for direction."

Upon this errors are not specifically assigned. The stipulation referred to is:

"It is hereby stipulated and agreed by and between counsel for the respective parties in the above mentioned cause that inasmuch as the lower court only passed upon the question of tender, and inasmuch as the testimony on plaintiff's side of this case is contained in this record, that all the questions included in defendant's motion for the direction of a verdict may be considered by the Supreme Court, the same as if they had been passed on by the lower court."

The motion for a directed verdict was based upon the grounds that there had been accord and satisfaction; that defendant's negligence was not proven; that plaintiff accepted the risk of the injury, and was himself guilty of negligence contributing thereto, as well as the ground that no tender had been made.

With respect to the error specially assigned, it is contended by the appellant that he made a case relieving him from the duty of tendering to defendant the money it had paid to him in settlement. He cites and relies upon *Mullen v. Old Colony Railroad,* 127 Mass. 86 (34 Am. Rep. 349), *Stewart* v. *Railroad Co.,* 141 Ind. 55 (40 N. E. 67); *Bliss* v. *Railroad Co.,* 160 Mass. 447 (36 N. E. 65, 39 Am. St. Rep. 504), *Butler* v. *Railroad Co.,* 88 Ga. 594 (15 S. E. 668), in which cases the principle applied is that, as with respect to a disputed or unliquidated demand, an accord is matter of

contract, preceding or accompanying satisfaction, if the contract is not made and the money paid and received pursuant thereto, but the money is paid and received on some other account, it need not be tendered back before bringing suit upon the demand. In *Mullen* v. *Old Colony Railroad, supra,* the court, referring to the rule that tender of the sum received must precede suit, if it is claimed the accord was fraudulently brought about, said:

"The principle * * * applies to those cases only where that which was received, and which must be returned, was the consideration of the contract or settlement which the receiver intended to make, and understood that he was making, and which he seeks to avoid by reason of fraudulent practices of the other party which led him to agree to its terms. It does not apply to cases where a party holds out that he gives the consideration for one thing, and by fraud obtains an agreement that it was given for another thing.

"In the case at bar, if the evidence for the plaintiff was true, he signed the paper, which purports to show a settlement of his claim, believing it to be a totally different paper from what it, in fact, was. Signing in that belief, in consequence of the fraudulent representations of the defendant, he is not bound by it, because he never made the agreement which the paper indicates. He is not attempting to avoid a contract which he has made, but is showing that he did not make the contract which he apparently made. If this fact is established, it establishes the further fact that he did not receive the money, which was paid him when the paper was signed, in consideration of the settlement of his claim; for the only ground on which the effect of the paper is destroyed is that it was not his intelligent act, but was fraudulently procured by the artifice of the defendant, who knew that he had not made the settlement and had not received a consideration for a settlement."

The court, in *Butler* v. *Railroad Co.,* 88 Ga. 594, 598, 599 (15 S. E. 668), states and applies the rule in the following:

"It is quite true that if the plaintiff had made any

settlement or entered into any accord touching the injury complained of in his declaration, and now sought to open the same on the ground of fraud, he would have to tender back any money which had been paid to him in consequence or by way of execution of the settlement or accord. *East Tennessee, etc., R. Co.* v. *Hayes,* 83 Ga. 558 [10 S. E. 350]. The reason is that to attack a contract on the ground of fraud involves an admission that such a contract was made, and also an election to rescind it; and the rule of rescission always is that the opposite party must be placed in *statu quo.* But where the plaintiff, instead of attacking a contract for fraud, merely attacks a writing which purports to embody such a contract, and alleges that his signature to the writing was appended without knowledge of its contents and under the belief that he was signing another document, he neither admits that the contract was made nor seeks to rescind it. His grievance is not that he was induced by fraud to enter into a contract, but that a fraudulent advantage was taken of him by procuring his signature to a writing, which purports to set forth a contract into which he never entered. On his theory, the money he received was no fruit of such a contract, and could not have been, because none such was ever made. The money, as he contends, was paid him as wages which he claimed then, and still claims, as due him under a previous and wholly different contract. Taking all he says as true, he has received nothing which he ought not to have had independently of any agreement, fraudulent or not fraudulent, touching his claim for damages on account of the personal injury sued for, and he denies distinctly that the contract set forth in the writing was ever made. *Mullen* v. *Railroad Co.,* 127 Mass. 86 [34 Am. Rep. 349]. The true question is, therefore, not whether he could be heard without tendering back the money, but whether, as a rule of evidence, he is estopped from controverting the truth of the contents of the writing. That he is an illiterate person is apparent from the fact that he subscribed the instrument by making his mark, his name being written by some one else. He testifies that he cannot read, and that the document was not read over to him, and that he thought he was signing an ordinary pay roll. In the course of his testimony he details the circumstances

which led up to the payment, and, while he does not explain fully why he thought he was signing an ordinary pay roll, the facts which he mentions are strongly suggestive of misrepresentation on the part of one or more agents of the company, together with erroneous inferences made by his own mind, as the true explanation. It may be that, under the authorities, he did not show the alleged fraud by sufficient evidence, but this is a very different matter from tendering back the money as a condition precedent to having the charge of fraud submitted to the jury on such evidence as there was."

In this State a similar proposition has received some attention in *O'Neil* v. *Iron Co.,* 63 Mich. 690 (30 N. W. 688) ; *Henderson* v. *McRae,* 148 Mich. 324 (111 N. W. 1057) ; *Proctor* v. *Hobart M. Cable Co.,* 145 Mich. 503 (108 N. W. 992) ; and in other cases.

But there is no room for the application of the doctrine in the case at bar, because the evidence that plaintiff and defendant did reach an agreement with respect to compensation for plaintiff's injuries is very clear. He was injured, and did not work for 14 days. He was earning $5 a day. He lost, in this way, $70. He returned to work, supposing, as he says, that his injury was not continuing; at least, was not permanent. The claim agent of defendant saw him and inquired how he got hurt and said:

" 'The thing that hurt you the worst is the time you lost.' I said, 'I did not know; the company had always treated me all right.' And he said, 'Well,' he said, 'I am going to take this up to No. 1 plant and see that you get your wages for the time you were off.' I said, 'All right.' He represented himself to be assistant claim agent of the Studebaker."

Later on, on plaintiff's application, the subject was resumed, and plaintiff was informed by the same agent:

"He said the company would not let him give me all the wages; it amounted to $70; he would give me $42.50 of it, so I took it."

True, plaintiff testifies that he understood this was for lost wages, and that he was not told that it was for a release of all claims for his injury; that he did not read the paper—release—which he signed, and it was not read to him. But no fraud was practiced, and none is alleged, in procuring the written release. Plaintiff is intelligent and can read. The release is plainly printed, and its terms are not doubtful. Moreover, as has been stated, plaintiff did not then suppose that his injury was serious. He had returned to work and was earning wages, and his apparent damages were his lost time. It is clear that plaintiff understood the effect of what he was doing, some evidence of which is found in the declaration. The trial court could not have permitted a finding opposed to this conclusion to stand.

The stipulation of counsel and the pro forma ruling of the trial court upon other points relied upon by appellee at the trial impose no duty upon this court to examine those points, beyond this, that if the reason given by the trial court for directing a verdict was a bad reason, and it appeared, nevertheless, that the ruling was a correct one, the judgment would be affirmed. The cause has been briefed and argued as if all of the grounds urged for a directed verdict were open to our consideration. It may therefore be said, with propriety, that we were impressed at the hearing, and an examination of the record has convinced us, that the defendant's negligence was not made out, and that plaintiff's injury was the result of his own want of care; the risk of the particular injury being voluntarily and intelligently assumed by him.

The judgment is affirmed.

BROOKE, STONE, BIRD, MOORE, and STEERE, JJ., concurred with OSTRANDER, J.   MCALVAY, C. J., and KUHN, J., concurred in the result.