BARRIGER *v*. ZIEGLER.

1. COMPROMISE AND SETTLEMENT—RELEASE—FRAUD—ACTION MAY BE BROUGHT WITHOUT TENDERING RETURN OF CONSIDERATION.
   Where a release evidences a contract or settlement which the party executing it did not intend to make and did not in fact make, and which he executed in the belief it evidenced another and different agreement or settlement which he intended to and did make, and was induced to so believe by and through the fraud and deceit of the party to whom it was given, action may be brought without tendering a return of the consideration received.

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—MOTOR VEHICLES.
   In an action for personal injuries received by plaintiff when she was struck by defendant's automobile on a public street, the questions of defendant's negligence and

[1]Release, 34 Cyc. p. 1073; [2]Motor Vehicles, 42 C. J. §§ 1071, 1123; 49 L. R. A. 231; 35 L. R. A. (N. S.) 661; 23 R. C. L. 413.

plaintiff's contributory negligence, *held*, for the jury, under the evidence.

3. SAME—DEGREE OF CARE REQUIRED OF AUTOMOBILE DRIVER AT POINT WHERE PEDESTRIANS CROSS—NOTICE.

An automobile driver, on approaching a point where another street led into but did not cross the one on which he was driving, is held to no higher degree of care in regard to pedestrians than when traveling elsewhere between street intersections, unless he knew, or in the exercise of ordinary care should have known, that it was a place where pedestrians ordinarily crossed.

4. SAME—TRIAL—INSTRUCTIONS—NOTICE.

An instruction that an automobile driver, on approaching a crossing or a point where pedestrians ordinarily cross a highway, must have the automobile under such control that it can be immediately stopped if necessary was error, where there was no evidence that the driver knew or should have known that pedestrians ordinarily crossed at the point where plaintiff was struck, which was not a crossing.

5. APPEAL AND ERROR—EXCEPTIONS, BILL OF—STIPULATION FOR EXTENSION OF TIME TO SETTLE.

At any time* during the 20-day period after entry of judgment, the court may, without production or filing of the stenographer's certificate, extend the time to settle bill of exceptions beyond the 20-day period, but not beyond the time limited by statute, providing the attorney for the prevailing party consents thereto in open court or by written stipulation.

6. SAME—STIPULATION—EXTENSION OF TIME.

Where the attorney for the prevailing party, in the presence of the clerk of the court, wrote an order in the journal extending the time for settling bill of exceptions 60 days from date, if proper appeal bond was filed, it amounted to a written stipulation for such extension, and, on the filing of the bond, of which no complaint is made, the time was automatically so extended.

Error to Tuscola; Smith (Guy E.), J., presiding.

[3]Motor Vehicles, 42 C. J. §§ 689, 785; [4]Id., 42 C. J. §§ 695, 1139; [5]Appeal and Error, 4 C. J. §§ 1899, 1900; [6]Id., 4 C. J. § 1899.

Submitted October 12, 1927.    (Docket No. 100.)    Decided December 1, 1927.

Case by Ethel M. Barriger against Franklin C. Ziegler for personal injuries.    Judgment for plaintiff. Defendant brings error.    Reversed.

*George W. Des Jardins* (*Theo. D. Halpin*, of counsel), for appellant.

*H. H. Smith,* for appellee.

FLANNIGAN, J.    Plaintiff was struck and seriously injured by an automobile owned and driven by defendant.    To recover her resulting damages she brought this suit and had verdict and judgment.    The case is here on writ of error sued out by defendant.

G. H. Spaulding, an adjuster for defendant's insurer, the Ætna Casualty & Surety Company, secured her signature to an instrument, in form a full release and discharge of defendant of and from all claims, damages, and demands of plaintiff founded on her injury by him "for the sole consideration of fifty and no-one hundredths dollars, and doctor bill to be paid in the amount of fifty dollars."    When he called, which was 18 days after the accident, plaintiff was in bed. Following the accident she had not, up to that time, left her bed.    He signed and left on a "dresser" in the room a draft payable to her order for $50.    In connection with other information, intended evidently for the company's bookkeepers, it recited on its face it was in full settlement of plaintiff's claims.    After he left the draft was brought by Mrs. Rose, the nurse, to plaintiff, who indorsed and handed it back.    It was later cashed by Mrs. Rose, who retained and used the proceeds.    The doctor bill mentioned in the release was paid by the adjuster direct to the physician.    Before commencing her suit plaintiff did not return or

offer to return the proceeds of the draft or the money paid the doctor.

Plaintiff was removed from the scene of the accident to the office of a doctor who made an examination.   He found, as he testified, her right side bruised, three or four ribs broken and her shoulder blades and back injured.    In a semi-unconscious condition she was taken from his office to the home of Mrs. Rose, a neighbor, by whom she was nursed for six weeks.

Her position on the trial was, in substance, that she arranged with the adjuster to advance on account of her claim $50 for her nurse; that neither the paper she signed or the draft was read to her; that in her then physical condition she could not read; that she was assured by the adjuster the paper presented for her signature, and which he called "a paper to show Mrs. Rose got fifty dollars," was but a mere receipt for the $50 left for the nurse, and that, but for such belief for which the adjuster was responsible, she would not have affixed her signature.

Defendant's position was that, for the consideration recited in the release, plaintiff made full settlement of her claim; that in procuring the execution of the release no fraud or deceit was practiced; that the signing of the release, coupled with the indorsement and cashing of the draft, constituted an accord and satisfaction; and that, in any event, she was not entitled to sue without first tendering back the money received.

Whether plaintiff intended to and did make settlement in full, as set forth in the release, or partially only, as claimed by her, and if the latter, whether she was fraudulently led to believe she was signing a contract or agreement different from that stated in the release, was submitted to the jury under proper instructions.    The jury found as plaintiff contended, and we are of the opinion there was evidence sufficient to support their conclusion.   Even the adjuster testified

plaintiff's chief concern at the time was to get money to pay her nurse, and he admitted he did not know whether or not the release had been read to or by her. He said:

"I handed the release to Mrs. Rose.   *   *   *   Mrs. Rose took it over to Mrs. Barriger.   Mrs. Barriger signed it.   I don't know whether she read it or not. I didn't pay any particular attention."

The finding of the jury brought plaintiff's case within the rule that where a release evidences a contract or settlement which the party executing it did not intend to make and did not in fact make, and which he executed in the belief it evidenced another and different agreement or settlement which he intended to and did make, and was induced to so believe by and through the fraud and deceit of the party to whom it is given, suit may be brought without tendering a return of the consideration received. *Crawley* v. *Studebaker Corporation,* 183 Mich. 462; *Porth* v. *Cadillac Motor Car Co.,* 198 Mich. 501.

Whether defendant was guilty of negligence and plaintiff of contributory negligence were questions for the jury in the state of the evidence and were so submitted.   It remains to ascertain whether there was prejudicial error in the charge on this branch of the case.   The court gave plaintiff's sixth request, as follows:

"I charge you as a matter of law, a driver of an automobile approaching a crossing or a point where pedestrians ordinarily cross a highway, the automobile must be under such control that it can be immediately stopped if necessary."

The accident happened on a street of Caro called Frank.   Its course is east and west.   A canning factory is located south of the street.   A road led from the factory to the street but did not cross it. At the point where the road abutted the street there

was no authorized crossing. Plaintiff was employed in the factory. She left her work at noon, walked up the road to the street, crossed over the pavement, and, as she reached a grass plot on the north side, was overtaken by defendant's automobile which was traveling east. Plaintiff was accompanied to the south side of the street by two companions. Others from the factory preceded and followed her. Altogether there were "several." There was perhaps room for the inference that employees of the factory living north of the street crossed it at this place going to and from their work. Further than this, there was no evidence on the subject of the use of the point in question as a crossing by pedestrians. Nor was there any evidence tending to show defendant knew, or should have known, pedestrians made a practice of crossing the street at that place.

Passing the question whether there was evidence sufficient to support a finding that pedestrians commonly crossed the street where plaintiff crossed, but assuming they did so, it is clear the driver could be held to no higher degree of care upon approaching that point than when traveling elsewhere between street intersections unless he knew, or in the exercise of ordinary care would have known, it was a place where pedestrians ordinarily crossed.

The instruction was, we think, erroneous. The jury was permitted by it to hold defendant to the duty of having his car under such control upon approaching the place of injury that it could be stopped in time to avoid striking plaintiff whether he knew or did not know it was a place where pedestrians ordinarily crossed. This permission was not modified or withdrawn by any other part of the charge or by the charge as a whole.

Various other matters occurring on the trial are covered by assignments of error. They have all been

investigated.    Such of them as might call for discussion are not likely to arise on another trial.

Plaintiff's counsel moved to strike the bill of exceptions which was signed and filed July 12, 1927, on the ground the trial judge was without jurisdiction to settle or sign it.    Decision of the motion was reserved until the main case was heard and submitted.

The journal entry of the judgment is dated April 2, 1927.    Whether it was actually entered that day or on May 5, 1927, is disputed.    Plaintiff claims that entry was made on the former date, while defendant claims it was not entered until the latter.    If entered on May 5th, the jurisdiction of the trial judge to sign the bill of exceptions is conceded, but if entered on April 2d, his jurisdiction is denied.    What led to this dispute would make a long story, which there is no occasion to relate.    Without so holding, we will assume, for the purposes of the motion, the entry was made on April 2d.    The usual stenographer's certificate was not filed within 20 days following the judgment entry, nor until May 10, 1927.    The position of plaintiff's counsel is that, the certificate not having been filed, within the 20-day period, jurisdiction to settle exceptions was lost.    He does not contend that if the time was lawfully extended beyond the 20-day period the court was without jurisdiction to settle the exceptions when they were settled and signed on July 12th.    The question therefore is whether the time was lawfully extended beyond the 20-day period.

Any time during the 20-day period the court may, without production or filing of the stenographer's certificate, extend the time to settle exceptions beyond the 20-day period, but not beyond the time limited by statute, providing the attorney for the prevailing party consents thereto in open court or by written stipulation.    *Brevoort* v. *Wayne Circuit Judge,* 203 Mich. 388; *Reynick* v. *Saginaw Circuit Judge,* 210 Mich. 563; *Walker* v. *Wayne Circuit Judge,* 226 Mich. 393.

The journal entry of the judgment, which was in the usual form, was followed by an order reading:

"It is further ordered that said defendant have 20 days from the date hereof in which to move for a new trial or settle a bill of exceptions and if said defendant shall file a proper bond on appeal within said 20 days that said defendant may have 60 days from this date in which to settle a bill of exceptions."

Entry of the judgment on the journal was not made by the clerk of the court. It was entered in his presence but by the attorney for plaintiff. We hold the entry of the order on the journal of the court by the attorney for plaintiff in his own handwriting equivalent to a written stipulation for a 60-day extension of the time to settle the bill of exceptions on condition a proper appeal bond was filed within 20 days. The condition was fulfilled by defendant. An appeal bond, concerning the sufficiency of which no question is made, was filed April 16, 1927. The filing of the appeal bond was effective to automatically extend the time to settle the exceptions for the period of 60 days from April 2, 1927, and there was authority in the court to further extend the time, on proper showing, during the 60-day extension or after its lapse. *Walker* v. *Wayne Circuit Judge, supra.*

For the error pointed out, the judgment below is reversed and new trial granted, with costs of this court to defendant.

SHARPE, C. J., and BIRD, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.

The late Justice SNOW took no part in this decision.